**Slip Op. 09-134**

## UNITED STATES COURT OF INTERNATIONAL TRADE

CARPENTER TECHNOLOGY
CORPORATION, VALBRUNA SLATER
STAINLESS, INC., and ELECTRALLOY
CORPORATION, a DIVISION of G.O.
CARLSON, INC.,

         Plaintiffs,

         v.

UNITED STATES,

         Defendant.

**Before: Timothy C. Stanceu, Judge**

**Court No. 07-00366**

## OPINION AND ORDER

[Granting in part plaintiffs' motion for judgment upon the agency record and remanding the matter to the United States Department of Commerce to remedy an unlawful decision limiting individual examinations to only two respondents in an administrative review of an antidumping duty order]

         Dated: November 23, 2009

    *Kelley Drye & Warren LLP* (*Laurence J. Lasoff*, *Grace W. Kim*, and *Mary T. Staley*) for plaintiffs.

    *Tony West,* Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*L. Misha Preheim*); *Sapna Sharma*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

    Stanceu, Judge: Plaintiffs Carpenter Technology Corporation, Valbruna Slater Stainless,

Inc., and Electralloy Corporation, a Division of G.O. Carlson, Inc. (collectively, "plaintiffs")

contest the final determination ("Final Results") issued by the International Trade

Administration, United States Department of Commerce ("Commerce" or the "Department"), in

an administrative review of an antidumping duty order on imports of stainless steel bar from India (the "subject merchandise"). *Notice of Final Results & Final Partial Rescission of Antidumping Duty Admin. Review: Stainless Steel Bar from India*, 72 Fed. Reg. 51,595 (Sept. 10, 2007) ("*Final Results*"). Plaintiffs, petitioners in the underlying antidumping duty investigation and participants in the administrative review proceeding that gave rise to this action, raise various challenges to the Department's selection of two, out of a total of eight, respondents ("exporters/producers") for individual examination during the review. Commerce chose for individual examination the two respondents with the highest volume of exports of the subject merchandise to the United States during the period of review of February 1, 2005 through January 31, 2006 ("period of review" or "POR"). *Mem. from Int'l Trade Compliance Analyst, AD/CVD Operations, Office 1, to Senior Office Dir., AD/CVD Enforcement, Office 1*, at 4 (June 7, 2006) (Admin. R. Doc. No. 49) ("*Resp't Selection Mem.*"). Because Commerce determined a *de minimis* dumping margin for one of those two respondents, Commerce assigned to the six non-selected respondents the weighted-average antidumping duty margin it determined for the other examined respondent, which was 2.01%. *Final Results*, 72 Fed. Reg. at 51,596-97.

Before the court is the plaintiffs' motion for judgment upon the agency record. Pl's. Rule 56.2 Mot. for J. upon the Agency R. 1 ("Pls.' Mot."). Because the Department's decision limiting the number of examined respondents was contrary to law, the court, upon plaintiffs' motion, sets this decision aside and remands the Final Results to Commerce so that Commerce may make a new respondent selection decision and begin the process of resuming the administrative review with respect to the six non-selected respondents. The court denies relief

on plaintiffs' other claim, which is that Commerce acted contrary to law in performing only a partial verification of one of the examined respondents.

## I. BACKGROUND

Commerce initiated the administrative review in April 2006, after three Indian exporters/producers of the subject merchandise requested a review of their respective sales and petitioners requested a review of the sales of nine other Indian exporters/producers. *See Initiation of Antidumping & Countervailing Duty Admin. Reviews & Deferral of Admin. Reviews*, 71 Fed. Reg. 17,077 (Apr. 5, 2006) ("*Initiation Notice*"). Of the twelve Indian exporters/producers for which a request for review had been made, and of which Commerce initiated a review, Commerce rescinded the review as to three exporters/producers that it determined to have had no sales of the subject merchandise during the POR. *See Notice of Prelim. Results of Antidumping Duty Admin. Review, Intent to Rescind & Partial Rescission of Antidumping Duty Admin. Review: Stainless Steel Bar from India*, 72 Fed. Reg. 10,151, 10,154 (Mar. 7, 2007) ("*Prelim. Results*"). Commerce subsequently rescinded the review of another exporter/producer for which Commerce determined that there were no suspended entries of subject merchandise. *See Stainless Steel Bar From India: Notice of Intent To Partially Rescind Antidumping Duty Admin. Review*, 71 Fed. Reg. 29,916, 29,918 (May 24, 2006). As a result of these determinations, eight respondent exporters/producers remained subject to the review.

On June 7, 2006, Commerce issued a memorandum ("Respondent Selection Memorandum") announcing that, due to its limited resources, Commerce had determined that it would be impracticable for it to make individual dumping margin determinations for all of the eight remaining respondents and that, based on the allegations and workload required of the

review, Commerce could "examine a maximum of two exporters/producers of stainless steel bar from India." *Resp't Selection Mem.* 3; *see Prelim. Results*, 72 Fed. Reg. at 10,152-53. Commerce cited in the memorandum information it had obtained from the twelve exporters/producers listed in the notice initiating the review in response to Commerce's request for quantity and value information on sales of subject merchandise to the United States during the POR. *Resp't Selection Mem.* 2. Commerce selected only two of the eight companies remaining under review, Bhansali Bright Bars Pvt., Ltd. ("Bhansali") and Venus Wire Industries Pvt., Ltd. ("Venus"), for individual examination, explaining that these two companies were the two largest exporters/producers based on quantity of subject merchandise shipped to the United States during the POR. *Resp't Selection Mem.* 4; *Prelim. Results*, 72 Fed. Reg. at 10,152.

Commerce issued the preliminary results of the review ("Preliminary Results") in March 2007. *Prelim. Results*, 72 Fed. Reg. 10,151. Commerce announced a preliminary dumping margin of 2.10% for Bhansali and a preliminary *de minimis* rate of 0.03% for Venus. *Id.* at 10,157. Commerce conducted a verification of the sales and cost information submitted by Bhansali but conducted a verification of only the sales information submitted by Venus. *Final Results*, 72 Fed. Reg. at 51,596. In the Final Results, Commerce determined a weighted-average dumping margin of 2.01% for Bhansali and a *de minimis* rate of 0.03% for Venus, which it excluded from the calculation of the rate to be applied to the non-selected respondents.[1] *Id.*

---

[1] The non-selected respondents are Isibars Limited, Grand Foundry, Ltd., Sindia Steels Limited, Snowdrop Trading Pvt. Ltd., Facor Steels, Ltd., and Mukand Ltd. *Notice of Final Results & Final Partial Rescission of Antidumping Duty Admin. Review: Stainless Steel Bar from India*, 72 Fed. Reg. 51,595, 59,597 (Sept. 10, 2007) ("*Final Results*").

Accordingly, Commerce assigned to the non-selected respondents the 2.01% rate it had determined for Bhansali. *Final Results*, 72 Fed. Reg. at 51,597 & n.2.

Plaintiffs initiated this action on October 4, 2007. *See* Summons. Plaintiffs moved for judgment upon the agency record on May 19, 2008. Pls.' Mot. 2. At the court's request, the parties submitted additional briefing on certain issues raised by the Department's decision not to perform an individual examination of, and not to assign an individual dumping margin to, each of the eight respondents in the review. Pls.' Br. Regarding Commerce's Decision Not to Conduct an Individual Review of all Eight Resp'ts; Def.'s Supplemental Br.

## II. DISCUSSION

The court exercises jurisdiction under 28 U.S.C. § 1581(c). 28 U.S.C. § 1581(c) (2006). In reviewing the Final Results, the court must hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record or otherwise not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i) (2006). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

Plaintiffs claim that Commerce applied an unreasonable and impermissible methodology in selecting Bhansali and Venus as the respondents it would examine in the administrative review. Mem. in Supp. of Pls.' Rule 56.2 Mot. for J. upon the Agency R. 2 ("Pls.' Mem."). According to plaintiffs, selecting these two respondents because they were the two highest-volume exporters "violated the agency's statutory obligation to calculate dumping margins as accurately as possible" and "also was not based on substantial evidence in this record." *Id.* at 6. Plaintiffs argue, further, that "[o]ther cases in which Commerce has applied the weighted-average

to non-reviewed companies are . . . distinguished by the sheer number of companies involved, where there is no question that Commerce cannot examine each and every one." *Id.* at 14. According to plaintiffs, the Department's application of the review-specific rate was not reasonable in light of the fact that there are only eight respondents in this case. *Id.* at 9-12. They specifically object that Bhansali and Venus had then-current rates of 0% and 0.06%, respectively, while three of the non-selected companies, Facor, Isibars, and Mukand, had then-current rates of 19.54%, 21.02%, and 21.02%, respectively. *Id.* at 8-9. They argue that each of these non-selected respondents received a "windfall" when assigned a rate of 2.01% in the administrative review. *Id.* at 11. They contend that choosing the largest volume exporters was "certain to produce extremely skewed results," *id.* at 6, because "only the respondents who had the lowest prior dumping margins would be likely to have significant volumes, given that in a competitive marketplace the companies with the lowest dumping margins would be the companies from whom U.S. importers would want to buy." *Id.* at 13. Plaintiffs also argue that the Department's application of the weighted-average dumping margin to the non-selected respondents was unreasonable because it was contrary to established departmental policy and to the remedial intent of the antidumping law. *Id.* at 15-16. Furthermore, plaintiffs contend that Commerce failed to provide the parties an opportunity to comment on the methodology used to limit the number of respondents to be reviewed prior to the Department's implementation of that methodology. *Id.* at 16-18. Finally, plaintiffs argue that Commerce erred in conducting only a partial verification of Venus, one of the two examined respondents. *Id.* at 18-19.

A.  The Department's Decision Limiting the Number of Examined Respondents Was Contrary to the Governing Statute

The court considers, first, whether the Department's decision limiting the number of examined exporters/producers was consistent with the antidumping statute.[2]  The statute, in paragraph (1) of 19 U.S.C. § 1677f-1(c), establishes as a general requirement that Commerce "shall determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise" when "determining weighted average dumping margins under section 1673b(d), 1673d(c), or 1675(a) of [Title 19, United States Code].[3]  19 U.S.C. § 1677f-1(c)(1) (2006).  The statute creates an exception to the general requirement, under which exception Commerce is authorized to determine the weighted average dumping margins for fewer than all of the exporters or producers of the subject merchandise, "[i]f it is not practicable to make individual weighted average dumping margin determinations . . . because of the large number of exporters or producers involved in the . . . review."  19 U.S.C. § 1677f-1(c)(2).[4]  In

---

[2] The parties have addressed this issue in the additional briefing submitted at the court's request.  *See* Pls.' Br. Regarding Commerce's Decision Not to Conduct an Individual Review of all Eight Resp'ts; Def.'s Supplemental Br.  Because the court concludes that the Department's respondent selection decision was contrary to law for the reasons discussed in this Opinion and Order, the court finds it unnecessary to consider many of the arguments plaintiffs raise in support of their motion for judgment upon the agency record and many of the arguments defendants make in response.

[3] In this case, Commerce determined weighted-average dumping margins pursuant to 19 U.S.C. § 1675(a) (2006), which pertains to periodic administrative reviews of antidumping duty orders.

[4] Paragraph (2) of § 1677f-1(c) provides:
   If it is not practicable to make individual weighted average dumping margin determinations under paragraph (1) because of the large number of exporters or producers involved in the investigation or review, the administering authority may determine the weighted average dumping margins for a reasonable number of

(continued...)

that event, Commerce "may determine the weighted average dumping margins for a reasonable

number of exporters or producers," which it may select by using "statistically valid" sampling, or

it may examine the "exporters and producers accounting for the largest volume of the subject

merchandise from the exporting country that can be reasonably examined." 19 U.S.C.

§ 1677f-1(c)(2). Commerce chose the latter option in this review. *See Resp't Selection Mem.* 4.

At that time, eight respondents remained in the review. *See id.* at 2. Commerce set forth its

decision in the Respondent Selection Memorandum:

> AD/CVD Operations Office 1, the office to which this administrative review is
> assigned, does not have the resources to examine all such exporters/producers.
> This office is conducting numerous concurrent antidumping proceedings which
> place a constraint on the number of analysts that can be assigned to this case. Not
> only do these other cases present a significant workload, but the deadlines for a
> number of the cases coincide and/or overlap with deadlines in this antidumping
> proceeding. In addition, because of the significant workload throughout Import
> Administration, we cannot anticipate receiving any additional resources to devote
> to this antidumping proceeding. Based upon our analysis of the allegations and
> the workload required of this administrative review, we have determined that we
> can examine a maximum of two exporters/producers of stainless steel bar from
> India.

*Resp't Selection Mem.* 3 (footnote omitted).

As the Respondent Selection Memorandum confirms, the starting point for Commerce's

decision on respondent selection was its determination "that we can examine a maximum of two

---

[4](...continued)
exporters or producers by limiting its examination to–
        (A) a sample of exporters, producers, or types of products that is
statistically valid based on the information available to the administering
authority at the time of selection, or
        (B) exporters and producers accounting for the largest volume of the
subject merchandise from the exporting country that can be reasonably
examined.
19 U.S.C. § 1677f-1(c)(2) (2006).

exporters/producers of stainless steel bar from India." *Resp't Selection Mem.* 3. In stating this determination, Commerce implicitly construed § 1677f-1(c)(2) such that any number of exporters/producers larger than two was a "large number of exporters or producers" within the meaning of that term as used in the statutory provision. *See* 19 U.S.C. § 1677f-1(c)(2). The court must decide whether such a statutory construction is in accordance with law.

Commerce did not include a discussion of its reasoning on the statutory construction issue central to its respondent selection decision. The court nevertheless reviews the Department's construction according to the analysis set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984); *see Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1379-80 (Fed. Cir. 2001). In so doing, the court considers first "whether Congress has directly spoken to the precise question at issue," *Chevron*, 467 U.S. at 842; if so, the court "must give effect to the unambiguously expressed intent of Congress." *Id.* at 843. If not, and "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.*

Congress did not define the term "large number of exporters or producers involved in the . . . review," as used in 19 U.S.C. § 1677f-1(c)(2). Even though the term might be seen as inherently ambiguous in some contexts, the precise question posed by this case is whether the term plausibly may be construed to encompass any number larger than two. In answering this question, the court has no difficulty concluding, pursuant to the first step in a *Chevron* analysis, that the term will not bear any such construction. In *Zhejiang Native Produce & Animal By-Products Import & Export Corp. v. United States*, 33 CIT __, Slip Op. 09-87 (Aug. 19, 2009), the

Court of International Trade considered an issue nearly identical to the one posed by this case.

*Zhejiang* arose from a Commerce determination that individual examination of the four

respondents that remained in an antidumping administrative review at that time "was not

practicable because of resource constraints arising from the 'significant workload' Commerce

faced in other antidumping proceedings." *Zhejiang*, 33 CIT at __, Slip Op. 09-87, at 3 (citation

omitted). In *Zhejiang*, this court expressly rejected the conclusion by Commerce "that four was a

large number of respondents in the context of 'the various administrative circumstances'

Commerce was confronting during the review and that individual examination of all four

exporters and producers was not practicable because of its significant workload arising from

other antidumping reviews and investigations." *Id.* at __, Slip Op. 09-87, at 6 (citation omitted).

The opinion in *Zhejiang* concludes that "[t]he statute focuses solely on the practicability of

determining individual dumping margins based on the large number of exporters or producers

involved in the review at hand" and that "Commerce cannot rewrite the statute based on its

staffing issues." *Id.* at __, Slip Op. 09-87, at 6-7.

In this case, because Commerce's respondent selection decision was based on a statutory

construction at odds with the clearly expressed intent of Congress, it must be set aside, along

with the dumping margin of 2.01% that was assigned to the non-selected respondents and that

resulted directly from that unlawful decision. The court finds defendant's arguments to the

contrary to be unpersuasive. In support of Commerce's decision, defendant argues that "[t]he

Court's decision in *Zhejiang* notwithstanding, nothing in the statute limits Commerce's authority

to select the number of companies reviewed individually to those situations in which there is

some minimum number of total potential companies to consider." Def.'s Supplemental Br. 3.

Contrary to the premise of this argument, Congress imposed on Commerce a general requirement to "determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise." 19 U.S.C. § 1677f-1(c)(1). An exception to this requirement applies where "it is not practicable to make individual weighted average dumping margin determinations . . . because of the *large number* of exporters or producers involved in the . . . review." *Id.* § 1677f-1(c)(2) (emphasis added). As *Zhejiang* makes clear, Commerce is not free to invoke this exception unless faced with the prospect of examining individually a "large number" of exporters and producers, however that term may be defined. *See Zhejiang*, 33 CIT at __, Slip Op. 09-87, at 6.

Defendant also argues that in this case "Commerce limited the number of companies examined individually because it was not practicable to make individual antidumping duty determinations for each of the eight known exporters or producers of subject merchandise." Def.'s Supplemental Br. 3. This argument overlooks the important point that Commerce did not simply decide that it was impracticable to review eight respondents. Commerce expressly decided in the Respondent Selection Memorandum that it could examine no more than two exporters/producers. *See Resp't Selection Mem.* 3 ("Based upon our analysis of the allegations and the workload required of this administrative review, we have determined that we can examine *a maximum of two* exporters/producers of stainless steel bar from India" (emphasis added)). In light of the decision that examination of any number of exporters/producers in excess of two was not possible, the conclusion in the same memorandum that Commerce "does not have the resources" to review the eight respondents was essentially meaningless. *Id.* Defendant's argument that the facts of this case are distinguishable from those in *Zhejiang* (which, defendant

points out, involved a total of four, not eight, respondents) is flawed for the same reason. Def.'s Supplemental Br. 2-3. Because Commerce concluded that it could not examine individually even three respondents, the facts of this case closely parallel those of *Zhejiang*. Although defendant correctly argues that "this Court is not bound by a decision of another judge of the same court," *id.* at 2, the court is not applying the holding in *Zhejiang* as binding precedent. Nevertheless, the court considers instructive the reasoning in *Zhejiang* that Commerce is not permitted to rewrite the statute based on its own staffing issues. *See Zhejiang*, 33 CIT at __, Slip Op. 09-87, at 6-7. Here, the Department decided that it could review no more than two respondents, based on its surmising that "we cannot anticipate receiving any additional resources to devote to this antidumping proceeding" and on its "analysis of the allegations and the workload required of this administrative review." *Resp't Selection Mem.* 3.

The court next considers the question of an appropriate remand order. Commerce having already calculated individual weighted-average dumping margins for two exporters/producers (*i.e.*, Bhansali and Venus), the situation existing upon remand is that no individual examinations were performed of the six non-selected respondents. In the ordinary instance, *i.e.*, in the absence of any exception invoked under 19 U.S.C. § 1677f-1, Commerce is required to examine the individual sales of, and determine a weighted average dumping margin for, each of these six respondents. *See* 19 U.S.C. §§ 1675(a)(2), 1677f-1(c)(1). The statute, in § 1677f-1(c)(2), grants certain discretion (as discussed above) not to examine each respondent individually. At this point in the proceedings, however, the court need not decide whether Commerce may review fewer that all six of the previously non-examined respondents, and, Commerce not having ruled on this issue, the court declines to do so. Still, any decision on this issue that Commerce reaches

upon remand must be supported by substantial record evidence and adequate reasoning, and be in accordance with law. Accordingly, the court opines that should Commerce decide on remand that, according to § 1677f-1(c)(2), it is not practicable to examine individually each of the six previously non-selected respondents, such a decision likely could not be sustained on the record facts of this case.

Congress provided the authority in § 1677f-1(c)(2) as an exception to the general statutory requirement, expressed in § 1677f-1(c)(1), that individual weighted-average dumping margins be determined for *each* known exporter or producer of the subject merchandise involved in an administrative review. 19 U.S.C. § 1677f-1(c)(1). Within the statutory structure governing administrative reviews conducted under 19 U.S.C. § 1675(a), this general requirement is fundamental to ensuring that dumping margins, and accordingly antidumping duty assessment rates, are based on a comparison of the normal value and the export price (or constructed export price) of each entry of the subject merchandise. *See* 19 U.S.C. § 1675(a)(2). The court regards "this case as an instance in which an exception to 'a general statement of policy' is sensibly read 'narrowly in order to preserve the primary operation of the [policy].'" *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731-32 (1995) (quoting *Comm'r v. Clark*, 489 U.S. 726, 739 (1989)); Sutherland Statutory Constr. § 47:11 (6th ed. 2000) ("Where a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than the exceptions."). Sustaining a decision on remand to examine individually fewer that the six respondents, however, would require a broad view of the exception in § 1677f-1(c)(2) and the Department's authority thereunder. Moreover, Congress provided Commerce other authority to address the situation in which a review presents the need for Commerce to analyze an

inordinately large number of sales of subject merchandise.  *See* 19 U.S.C. § 1677f-1(a)(1)

(authorizing Commerce to "use averaging and statistically valid samples, if there is a significant

volume of sales of the subject merchandise or a significant number or types of products").  This

authority is available even where the number of exporters and producers to be individually

examined is not particularly large.  *See id.*  The presence of this authority further supports a

construction of § 1677f-1(c)(2) under which limiting the number of individually examined

respondents is intended to be the exceptional circumstance, not the norm.[5]  Were Commerce

permitted to decide against conducting an individual examination of all respondent exporters and

producers based only on a conclusion that constraints on its resources compels that decision,

Commerce could decide to limit its individual examinations in practically any review that

involves multiple respondents, even where the number of respondents to be examined

individually is not out of the ordinary.  If Commerce could limit the individual examination of

respondents in instances in which only six respondents are involved, what Congress intended as

an exceptional circumstance–to be applied only where the number of respondents is

"large"–would instead become the norm.

          If, instead, Commerce on remand decides to conduct an individual examination of each of

the six previously non-selected respondents, it will need to reopen the administrative record and

solicit the necessary information from these respondents.  With respect to these six

exporters/producers, the record does not contain significant information beyond the responses to

the Department's request for quantity and value information on sales of subject merchandise to

---

[5] The court takes judicial notice that Commerce, on numerous occasions, has reviewed six or more respondents in an administrative review under 19 U.S.C. § 1675(a).

the United States. *See Resp't Selection Mem.* 2; *Prelim. Results*, 72 Fed. Reg. at 10,152;

*Initiation Notice*, 71 Fed. Reg. at 17,078.[6]   The court is not in a position to estimate the time that

will be required for Commerce to obtain the necessary information, complete the individual

examinations, and issue an amended final determination of the results of the administrative

review that sets forth the necessary individual weighted-average dumping margins.  The court's

remand order therefore is directing Commerce to file an interim remand redetermination that

informs the court of the Department's decision as to whether it will conduct individual

examinations of some or all of the six respondents and, if so, of the time Commerce will require

to publish an amended final determination of the results of the review that sets forth dumping

margins for these respondents.[7]

---

[6] Commerce requested only volume and value data prior to making its respondent selection decision.  *See, e.g.*, *Letter from Program Manager, Office 1, AD/CVD Operations, Dep't of Commerce ("DOC"), to Facor Steels Ltd.* 1 (Apr. 7, 2006) (Admin. R. Doc. No. 9) (requesting only that Facor Steels Limited "provide the total quantity (metric tons) and value of the subject merchandise that it exported to the United States during the period of review, February 1, 2005 through January 31, 2006" and "ensure that the amounts reported include all affiliated companies").  Commerce sent letters containing the same request, verbatim, to the eleven other respondents for which review had been requested.  *See Letter from DOC to Mukand Ltd.* 1 (Apr. 7, 2006) (Admin. R. Doc. No. 10); *Letter from DOC to Venus Wire Indus. Ltd.* 1 (Apr. 7, 2006) (Admin. R. Doc. No. 11); *Letter from DOC to Snowdrop Trading Pvt., Ltd.* 1 (Apr. 7, 2006) (Admin. R. Doc. No. 12); *Letter from DOC to Sindia Steels Ltd.* 1 (Apr. 7, 2006) (Admin. R. Doc. No. 13); *Letter from DOC to Meltroll* 1 (Apr. 7, 2006) (Admin. R. Doc. No. 14); *Letter from DOC to Grand Foundry, Ltd.* 1 (Apr. 7, 2006) (Admin. R. Doc. No. 15); *Letter from DOC to Bhansali* 1 (Apr. 7, 2006) (Admin. R. Doc. No. 16); *Letter from DOC to Atlas Stainless* 1 (Apr. 7, 2006) (Admin. R. Doc. No. 17); *Letter from DOC to Akai Asian* 1 (Apr. 7, 2006) (Admin. R. Doc. No. 18); *Letter from DOC to Isibars Ltd.* 1 (Apr. 7, 2006) (Admin. R. Doc. No. 19); *Letter from Miller & Chevalier to Sec'y of Commerce* 1 (Apr. 24, 2006) (Admin. R. Doc. No. 33) (regarding respondent Viraj); *Mem. from Int'l Trade Compliance Analyst, Office 1, to The File* 1 (Apr. 24, 2006) (Admin. R. Doc. No. 34) (regarding respondent Viraj).

[7] Publication of an amended determination of final results is necessary for various reasons, including the right of the six affected respondents to contest the determination of their weighted-average dumping margins.  *See* 19 U.S.C. § 1516a(a) (2006).

B.  Commerce Acted Lawfully in Performing Only a Partial Verification as to Venus

Plaintiffs contend that the Department's determination to conduct a full verification of Bhansali, but only a partial verification of Venus, was contrary to law.  Pls.' Mem. 18-19. Plaintiffs acknowledge that Commerce is not required by statute to conduct a full verification of the respondents in every review but argue that where, as here, only two respondents were examined, the decision to conduct a complete verification with respect to the data pertaining to only one of those respondents "is not a reasonable fulfillment of Commerce's responsibility to calculate dumping margins as accurately as possible."  *Id.* at 19.  According to plaintiffs, "[f]ull verification is especially important in this case where non-selected respondents' dumping margins were based on a small sample of other respondents' data and where the selected respondents were so differently situated from those respondents that were not selected for review."  Pls.' Reply Br. 12-13.  Plaintiffs cite in support of their argument *Coalition for the Preservation of American Brake Drum & Rotor Aftermarket Manufacturers v. United States*, 23 CIT 88, 109 & n.36, 44 F. Supp. 2d 229, 250 & n.36 (1999) ("*Brake Drum*").  Pls.' Reply Br. 13.

The court finds no merit in plaintiffs' argument on verification.  Although this argument is correct that the overriding purpose of the antidumping statute is the calculation of antidumping duty margins that are as accurate as possible, the argument ignores the breadth of the Department's discretion to decide whether and how to verify the information submitted during an antidumping proceeding.  In 19 U.S.C. § 1677m(i)(3), Congress set forth certain circumstances in which Commerce must verify all information upon which it relies in making a final determination in an administrative review under § 1675(a), but those circumstances were not

present in this case.[8] The decision whether or not to conduct a full verification of the information

relevant to Venus was one that, under the relevant statutory provisions, is left to the

Department's discretion. It is well established that agencies enjoy broad discretion in allocating

their investigative resources. *See Torrington Co. v. United States*, 68 F.3d 1347, 1351 (Fed. Cir.

1995) (citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)). Plaintiffs' reliance on *Brake Drum*,

23 CIT at 109 & n.36, 44 F. Supp. 2d at 250 & n.36, is unavailing. *See* Pls.' Reply Br. 13. In

*Brake Drum*, the Court of International Trade observed that Commerce had verified fully the

respondents in the case whose margins were used to calculate rates for other, non-examined

respondents. *Brake Drum*, 23 CIT at 109 & n.36, 44 F. Supp. 2d at 250 & n.36 (concluding that

"Commerce did not err by not verifying the non-selected Respondents" and noting that

Commerce "never used unverified information to calculate the margins for the non-selected

Respondents" and instead based the non-selected respondents' margins "upon the verified data of

the selected Respondents"). The case does not hold that Commerce lacks discretion to conduct a

---

[8] Under § 1677m(i)(3), Commerce must verify all information upon which it relies in making a final determination in an administrative review under § 1675(a) if:
> (A) verification is timely requested by an interested party as defined in section 1677(9)(C), (D), (E), (F), or (G) of this title, *and*
> (B) no verification was made under this subparagraph during the 2 immediately preceding reviews and determinations under section 1675(a) of this title of the same order, finding, or notice, except that this clause shall not apply if good cause for verification is shown.

19 U.S.C. § 1677m(i)(3) (2006) (emphasis added). Although plaintiffs argue that they made a request for full verification of Venus during the review, they concede that the request was untimely for purposes of 19 U.S.C. § 1677m(i)(3). *See* Mem. in Supp. of Pls.' Rule 56.2 Mot. for J. upon the Agency R. 18, n.17. Plaintiffs' request was made more than 100 days after the publication of the notice of initiation of review. *See* Pls.' Reply Br. 11 & n.9; *Letter from Kelley Drye Collier Shannon to Sec'y of Commerce* 1 (Aug. 31, 2006) (Admin. R. Doc. No. 75).

full verification of the data of one respondent but not another. For these reasons, the court must sustain the Department's decision to conduct a partial examination with respect to Venus.

### III. CONCLUSION

The court concludes that the Department's respondent selection decision was contrary to law because it was grounded in an impermissible statutory construction. The court further concludes that Commerce did not act contrary to law in deciding during the administrative review not to conduct a full verification of the submitted information pertaining to Venus.

### ORDER

Upon review of the *Notice of Final Results and Final Partial Rescission of Antidumping Duty Administrative Review: Stainless Steel Bar from India*, 72 Fed. Reg. 51,595 (Sept. 10, 2007) ("*Final Results*"), the internal memorandum of the United States Department of Commerce setting forth its respondent selection decision ("Respondent Selection Memorandum"), Plaintiff's Rule 56.2 Motion for Judgment upon the Agency Record ("Plaintiffs' Motion"), Defendant's Opposition to Plaintiffs' Motion for Judgment upon the Agency Record, and all papers and proceedings had herein, and after due deliberation, it is hereby

**ORDERED** that Plaintiffs' Motion be, and hereby is, GRANTED IN PART and DENIED IN PART; it is further

**ORDERED** that the *Final Results*, 72 Fed. Reg. 51,595, be, and hereby are, remanded to Commerce for redetermination in accordance with this Opinion and Order; it is further

**ORDERED** that the respondent selection decision in the *Final Results*, 72 Fed. Reg. 51,595, as set forth in the Respondent Selection Memorandum, and the resulting decision in the *Final Results* to apply to the non-selected respondents an antidumping margin of 2.01% be, and hereby are, set aside as contrary to law; it is further

**ORDERED** that Commerce, in an interim remand redetermination, shall inform the court whether it will conduct individual examinations of, and calculate individual weighted-average

dumping margins for, Isibars Limited, Grand Foundry, Ltd., Sindia Steels Limited, Snowdrop Trading Pvt. Ltd., Facor Steels, Ltd., and/or Mukand Ltd. and, if Commerce will proceed to do so, also shall inform the court of the time period that Commerce will require to complete such examinations and issue an amended final determination of the results of the administrative review that sets forth weighted-average dumping margins for the individually-examined respondents; it is further

**ORDERED** that Commerce shall submit its interim remand redetermination within thirty (30) days of the date of this Opinion and Order; it is further

**ORDERED** that plaintiffs shall have twenty (20) days from the date of submission of the interim remand results in which to submit to the court comments on the interim remand redetermination; it is further

**ORDERED** that the decision by Commerce during the administrative review not to conduct a full verification of the submitted information pertaining to Venus be, and hereby is, affirmed; and it is further

**ORDERED** that plaintiffs' motion for oral argument, as filed on October 13, 2009, be, and hereby is, DENIED.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: November 23, 2009
New York, New York