**Slip Op. 10–42**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| EAST SEA SEAFOODS LLC, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> CATFISH FARMERS OF AMERICA, <br><br> Defendant-Intervenor. | **Before: Gregory W. Carman, Judge** <br><br> Court No. 10-00102 |

*[Plaintiff's Motion for Judgment on the Agency Record is DENIED IN PART and GRANTED IN PART; the Final Results of the fifth administrative review are REMANDED to Commerce; Commerce is instructed to file remand results and issue new liquidation instructions to Customs no later than April 27, 2010. The remaining component of Plaintiff's Motion for a Preliminary Injunction is denied as moot.]*

Arent Fox LLP (John M. Gurley, Diana Dimitriuc-Quaia, Matthew L. Kanna, Nancy Aileen Noonan), for Plaintiff.

Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Courtney S. McNamara, Claudia Burke); David W. Richardson, of counsel, Office of the Chief Counsel for Import Administration, Department of Commerce, for Defendant.

Akin, Gump, Strauss, Hauer & Feld, LLP (Valerie A. Slater, Jaehong David Park, Jarrod Mark Goldfeder, Natalya Daria Dobrowolsky, Nicole Marie D'Avanzo), for Defendant-Intervenor.

April 19, 2010

## OPINION & ORDER

**CARMAN, JUDGE:** Plaintiff East Sea Seafoods LLC ("ESS LLC" or "Plaintiff") is an importer of frozen fish fillets from the Socialist Republic of Vietnam subject to antidumping duty order A-552-801 (Notice of Antidumping Duty Order: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 68 Fed. Reg. 47,909 (Aug. 12, 2003) ("AD Duty Order")). (Doc. No. 6, Compl. ¶ 6.) ESS LLC contests the final results of the fifth administrative review ("5th AR") of the AD Duty Order. Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results of the Antidumping Duty Administrative Review and New Shipper Review, 75 Fed. Reg. 12726 (Mar. 17, 2010) (the "Final Results").

Plaintiff filed suit on March 19, 2010, concurrently filing an Application for a Temporary Restraining Order ("TRO") and a Motion for Preliminary Injunction ("PI"). (Doc. No. 8.) The Court denied the TRO application the same day it was filed, and scheduled a hearing on the PI motion for March 25, 2010 ("PI Hearing"). (Doc. No. 15.)

At the PI Hearing, the parties agreed that Plaintiff's motion for preliminary injunction was severable into two components. Defendant and Defendant-Intervenor[1] consented to the first component, an injunction prohibiting the liquidation of ESS LLC's

---

[1] Catfish Farmers of America ("CFA"), a participant in the initial antidumping investigation and each subsequent administrative review, whose consent motion to intervene was granted by order entered on March 24, 2010. (Doc. No. 24.)

and East Sea Seafoods Joint Venture Company's [ESS JVC] subject entries during the pendency of this action, including all appeals, and the Court granted that component of the motion by an order entered on March 25, 2010. (Doc. No. 30.) The second component of Plaintiff's motion for preliminary injunction requested that United States Customs and Border Protection ("CBP") be ordered "to refrain from collecting antidumping duty cash deposits at the Vietnam-wide entity rate of $2.11 per kilogram on imports" of Plaintiff's product, "and instead collect a cash deposit on such imports at the antidumping duty rate of $0.02 per kilogram, determined for [ESS JVC] in this proceeding." (Doc. No. 16 ("Pl.'s PI Mem.") at 1-2.) ESS LLC claimed a right to this relief on the grounds that Commerce required ESS LLC to pay cash deposits at the Vietnam-wide entity rate, rather than at ESS JVC's rate, after wrongly determining that Plaintiff was not the successor-in-interest to ESS JVC. (Pl.'s PI Mem. at 6-7.) Defendant and Defendant-Intervenor opposed this component of Plaintiff's PI motion. (Doc. No. 29 ("Def.'s PI Opp.").)[2]

The Court took the second component of Plaintiff's PI Motion under advisement and held its decision in abeyance. Meanwhile, in light of ESS LLC's claim of imminent irreparable harm, the Court entered a scheduling order on March 26, 2010 (Doc. No. 33),

---

[2] Defendant-Intervenor's opposition was presented orally at the PI Hearing. (Doc. No. 36, Confidential Transcript of PI Hearing.) (As Business Proprietary Information was presented at the hearing, the transcript is confidential.)

and an amended scheduling order on March 29, 2010 (Doc. No. 35), in order to directly reach the merits of the action via an expedited USCIT R. 56.2 Motion for Judgment on the Agency Record.  Pursuant to those orders, the United States timely filed an index of the administrative record (Doc. No. 37) and Plaintiff filed its R. 56.2 Motion and accompanying brief (Doc. No. 39 ("Pl's 56.2 Mem.")) on April 1, 2010.  On April 7, 2010, Commerce filed the official administrative record with the Court (Doc. No. 45) and Defendant and Defendant-Intervenor filed opposition briefs (Doc. Nos. 47 ("Def.'s 56.2 Opp.") and 48 ("Def.-Int.'s 56.2 Opp."), respectively).  On April 9, 2010, the Court granted Plaintiff leave to file a reply (Doc. No. 51 ("Pl.'s 56.2 Reply")), and Defendant leave to file a sur-reply (Doc. No. 52 ("Def.'s 56.2 Sur-Reply")).

The Court has considered the administrative record, the positions expressed by the parties, and all relevant provisions of law.  The Court affirms the decision of Commerce that ESS LLC is not a successor-in-interest to ESS JVC because that determination was based upon substantial evidence and made in accordance with law. Plaintiff's 56.2 motion is therefore denied as to the successor-in-interest issue.

The Court, however, finds unlawful Commerce's decision to assign ESS LLC the Vietnam-wide entity rate without first considering evidence on the record that specifically addresses the extent to which ESS LLC is *de facto* and *de jure* independent from the control of the government of Vietnam.  The Court also finds that the decision

of Commerce to order liquidation of entries by ESS JVC at the rate assigned to ESS LLC for all entries made after the effective date of the name change is not supported by substantial evidence in the record or otherwise in accordance with law.

The Court therefore remands this case to Commerce. On remand, Commerce must consider all of the evidence in the administrative record pertaining to ESS LLC's *de jure* and *de facto* independence from the Vietnamese government and make a finding as to whether ESS LLC has rebutted the presumption of government control. Upon a finding that ESS LLC is independent of the control of the Vietnamese government, Commerce must assign a separate cash deposit rate to ESS LLC that is supported by substantial evidence and is otherwise in accordance with law, and shall immediately issue liquidation instructions to CBP adjusting the cash deposit rate for ESS LLC accordingly. Any finding by Commerce that ESS LLC is not independent of the control of the Vietnamese government must explain why the presumption has not been rebutted, and why the evidence found sufficient in the Preliminary Results to establish ESS JVC's independence from the Vietnamese government is insufficient to establish the same for ESS LLC.

Commerce must also provide a reasoned explanation, supported by evidence in the record, for why entries shipped by ESS JVC but entered after the effective date of the name change should be treated as entries made by ESS LLC. If Commerce

determines on remand that all entries shipped by ESS JVC should be given the rate assigned to ESS JVC of $0.02 per kilogram, it shall amend the liquidation instructions accordingly.

The results of Commerce's remand determination shall be filed with the Court no later than April 27, 2010.

As the Court has ruled on the merits of Plaintiff's claim, the remaining component of Plaintiff's Motion for Preliminary Injunction is denied as moot.

BACKGROUND

I.      <u>Antidumping Duty Order</u>

The AD Duty Order at issue in this case established a Vietnam-wide entity rate of 63.88%.  <u>See</u> 68 Fed. Reg. at 47,910.  The 63.88% dumping margin was based on Commerce's findings that Vietnam was a non-market economy ("NME") and the application of adverse facts available "consistent with . . . previous cases in which the respondent is considered uncooperative."  <u>Notice of Final Antidumping Duty Determination of Sales at Less Than Fair Value and Affirmative Critical Circumstances: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam</u>, 68 Fed. Reg. 37,116, 37,119-20 (June 23, 2003).  Neither ESS JVC nor ESS LLC were parties to the investigation.  <u>See</u> AD Duty Order.  ESS JVC first began exporting subject merchandise during the period of review ("POR") covered by the third annual review of the AD

Duty Order, at which time Commerce granted ESS JVC's separate rate application and calculated ESS JVC's individual dumping margin and cash deposit rate as 0.0%. See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam:  Final Results of Antidumping Duty Administrative Review and Partial Rescission, 73 Fed. Reg. 15,479 (Mar. 24, 2008).  The fourth annual review was rescinded as to ESS JVC because it made no entries of the subject merchandise during that POR.  See Frozen Fish Fillets from Vietnam:  Notice of Extension of Time Limit for Preliminary Results of Antidumping Duty Administrative Review and Partial Rescission of Administrative Review, 73 Fed. Reg. 11,391 (Mar. 3, 2008).

## II.      Fifth Administrative Review

At the heart of this case is a great deal of confusion about which East Sea Seafoods company (ESS JVC or ESS LLC) was filing documents with the agency, at what time, and on whose behalf.  This portion of the background describes all the relevant filings of ESS JVC and ESS LLC in the 5th AR, with particular attention to those details.

### A.      Notices of Opportunity to Request and Initiation

On August 1, 2008, Commerce published a notice of the opportunity to request a fifth administrative review of AD Duty Order for the POR covering August 1, 2007 through July 31, 2008.  Antidumping or Countervailing Duty Order, Finding, or

Suspended Investigation; Opportunity to Request Administrative Review, 73 Fed. Reg.

44,966 (Aug. 1, 2008) ("5th AR Request Notice"). (PR[3] 1.) Commerce received seven

letters requesting administrative review (PR 2-8), including one submitted on August

28, 2008 by counsel for Plaintiff in the current action (PR 3), which requested

administrative review "on behalf of East Sea Seafoods Joint Venture Co., Ltd." The

August 28, 2008 letter made no mention of or reference to ESS LLC. (PR 3.)

On September 30, 2008, Commerce published a notice of the initiation of the 5th

AR of the AD Duty Order. Initiation of Antidumping and Countervailing Duty

Administrative Reviews and Requests for Revocation in Part, 73 Fed. Reg. 56,795, 56,796

(Sep. 30, 2008) ("Notice of Initiation"). (PR 9, Pl.'s Public 56.2 App.[4] Tab 4.) Under the

heading "Socialist Republic of Vietnam: Frozen Fish Fillets, A-552-801," the initiation

notice lists 20 companies, including "East Sea Seafoods Joint Venture Co., Ltd." Id. The

Notice of Initiation contains no reference to ESS LLC. Id. A footnote to the heading for

Vietnamese frozen fish fillets states:

> If one of the above named companies does not qualify for a
> separate rate, all other exporters of frozen fish fillets from
> the Socialist Republic of Vietnam who have not qualified for

---

[3] "PR" refers to the public version of the official administrative record; "CR" refers to the confidential version.

[4] The public and confidential appendices accompanying Plaintiff's 56.2 Motion contain the same documents in the same tabs (varying only as to the redaction of business proprietary information) and are collectively referred to as "Pl.'s 56.2 App."

a separate rate are deemed to be covered by this review as part of the single Vietnam entity of which the named exporters are a part.

Id. at 56,797 n.1.

### B.    Respondent Selection

On October 17, 2008, counsel for Plaintiff in the current action submitted a respondent selection comment letter to Commerce "on behalf of East Sea Seafoods Joint Venture Co., Ltd. and Piazza's Seafood World LLC ('collectively [sic] 'East Sea'), interested parties" in the 5th AR, stating that "as the Department is aware, East Sea sources its product from one of the largest, if not the largest, pangasius processors in the world" and that "[a]s a mandatory respondent, East Sea would be providing the Department with factors of production based on one of the largest production datasets [sic] for pangasius production that is available."  (PR 22 at 1-3, CR 2 at 1-3; Pl.'s 56.2 App. Tab 5.)

ESS JVC requested, in the alternative, that if it was not chosen as a mandatory respondent, it be permitted to participate as a voluntary respondent.  (PR 22 at 3, CR 2 at 3.)  The letter did not mention ESS LLC; the accompanying certification by Jennifer Champagne identified her as "Vice-President of East Sea Seafoods Joint Venture Co., Ltd." and Plaintiff's attorneys signed the letter as "[c]ounsel to East Sea Seafoods Joint Venture Co., Ltd."  (PR 22 at 4-5, CR 2 at 4-5.)  CFA also submitted a respondent-

selection comment letter to Commerce on October 20, 2008, urging that ESS JVC be selected as a mandatory respondent. (PR 25.) CFA made no mention of ESS LLC. (Id.)

On October 29, 2008, Commerce issued its respondent selection memorandum. (PR 30, CR 7; Pl.'s 56.2 App. Tab 8 ("Respondent Selection Memo").) Based upon CBP data on entries of subject merchandise during the POR (see CR 1, CR 4), Commerce chose to limit the respondents to the two largest exporters of subject imports, QVD and Vinh Hoan.[5] (Id.) ESS JVC was not chosen as a mandatory respondent, and there is no mention of ESS LLC in the Respondent Selection Memo. (Id.)

---

[5] Commerce limited the mandatory respondents to QVD and Vinh Hoan pursuant to authority purportedly given by Section 777A of the Tariff Act of 1930. (Respondent Selection Memo at 2-5.) Section 777A of the Tariff Act of 1930, as amended, allows Commerce to limit its review to exporters "accounting for the largest volume of the subject merchandise from the exporting country **that can reasonably be examined**" only where "**it is not practicable** to make individual weighted average dumping margin determinations [for each known exporter] **because of the large number of exporters**" involved in the review. 19 U.S.C. § 1677f-1(c)(2) (2006) (emphasis added).

On at least two occasions, The Court of International Trade has held illegal Commerce's examination in an administrative review of only the two largest exporters, holding that circumstances similar to those present here did not meet the statutory prerequisite of a "large number of exporters." See Carpenter Tech. Corp. v. United States, 33 CIT ___, 662 F. Supp. 2d 1337, 1341-44 (2009) (holding that agency violated 19 U.S.C. § 1677f-1(c)(2) when failing to consider whether number of exporters at issue was "large" before determining, based on its workload, that it would only examine two out of eight respondents); Zhejiang Native Produce & Animal By-Products Import & Export Corp. v. United States, 33 CIT ___, 637 F. Supp. 2d 1260, 1263-65 (2009) (holding, in a case involving four respondents, that "in assessing whether the number of exporters" is "large," Commerce "may not rely upon its workload caused by other antidumping proceedings" lest it "rewrite the statute based on its staffing issues."). This issue is not implicated here, as Plaintiff has not challenged Commerce's selection of respondents.

C.      **ESS LLC Separate Rate Certification**

The first time ESS LLC is mentioned in the administrative record is in a filing consisting of a letter and accompanying Separate Rate Certification form, filed on October 31, 2008 (two days after the issuance of Commerce's Respondent Selection Memo).  (PR 34, CR 8; Pl.'s 56.2 App. Tab 6.)  The letter states that it is being "filed on behalf of East Sea Seafoods Limited Liability Company" by Plaintiff's attorneys, who list themselves as "[c]ounsel to East Sea Seafoods Limited Liability Company."  (Id. at 1, 4.) ESS LLC attached a completed Separate Rate Certification form ("Separate Rate Certification"), which states in its heading that it is intended for "firms previously awarded separate rate status," and that "[f]irms that do not currently hold a separate rate may **not** use this Certification and **must** instead submit an Application for separate rate status" available on the Department's website.  (Separate Rate Certification at 1 (emphasis in original).)  The requester is listed as "East Sea Seafoods Limited Liability Company" (id.) and the applicant's name is given as "East Sea Seafoods Limited Liability Company ('East Sea Seafoods')" (id. at 3).  ESS LLC filled out the section of the form headed "**EXPORT CERTIFICATIONS (check any that apply)**" as follows:

> 7.      I certify that during the POR, the firm conducted
> business under the following (please include a list of
> all trade names):
>
> ☒       the same trade names as identified in the
> segment of investigation or review in which

the firm was granted a separate rate ("previous Granting Period").

☐ the same trade names as identified in the previous Granting Period, as well as new trade names.

☐ new trade names.

8. ☒ I certify the firm possesses an official government business license/registration documents [sic] for each trade name listed in response to question 7, above, valid during the POR.  (list [sic] each trade name, the corresponding document and its expiration date) .

9. ☒ I certify the firm exported or sold subject merchandise to the United States during the POR.

(Separate Rate Certification at 4-5. (explanatory footnotes omitted).)  In the section of

the form certifying absence of *de jure* control, ESS LLC checked off all of the boxes

certifying to facts establishing a lack of government control, except for the box

indicating that ownership remained the same during the POR; for that box, ESS LLC

provided a written explanation of the sale of a minority ownership interest during the

POR.  (Id. at 5.)  In the section of the form certifying absence of *de facto* control, ESS LLC

checked off all of the boxes certifying to facts establishing a lack of government control.

(Id. at 5-6.)  In the sales and affiliations section of the form, ESS LLC checked off the box

certifying that "the firm made at least one export or sale to the United States during the

POR" to "affiliated parties only."  (Id. at 6.)  In the section for additional documentation, ESS LLC stated:

> During the POR, based on a law affecting many companies, the Vietnamese government required East Sea Seafoods to change its name from "East Sea Seafoods Joint Venture Co., Ltd." to "East Sea Seafoods Limited Liability Company". [sic]  This change had no affect [sic] on East Sea Seafoods operations during the POR.

(Id. at 7.)  Jennifer Champagne, "Vice President, currently employed by East Sea Seafood [sic]," signed certifications as to the accuracy of the responses, the applicability of the previously-granted separate rate, and the willingness of ESS LLC to cooperate with future document requests from Commerce.  (Id., Ex. 1.)  The record contains no indication that Commerce rejected ESS LLC's Separate Rate Certification of October 31, 2008 from the official administrative record.[6]

### D.     ESS LLC Section A Questionnaire Response

On November 25, 2008, ESS LLC, on its own behalf, submitted "as a voluntary respondent" a response to the Department's Section A Questionnaire.  (PR 41, CR 10 ("Section A Response"); excerpts at Pl.'s 56.2 App. Tab 3.)  Regarding the quantity and value of its sales, ESS LLC attached a quantity and value chart to the response.  (Id., Ex.

---

[6] Commerce did, however, refer to the October 31, 2008 Separate Rate filing as "no longer valid" in the preliminary results of the 5th AR.  Certain Frozen Fish Fillets From the Socialist Republic of Vietnam:  Notice of Preliminary Results of New Shipper Reviews and Fifth Antidumping Duty Administrative Review, 74 Fed. Reg. 45,805, 45,807 n.5 (Sept. 4, 2008) ("Preliminary Results").

A-1.)  That chart does not, however, distinguish between ESS LLC and ESS JVC sales.

(Id.)  ESS LLC stated that "[a]ll reported sales are to the first unaffiliated customer."  (Id. at 1.)  In the instructions for question 2, the Department indicated that "exporters requesting a separate rate [from the NME] must respond to the following questions in order for the Department to consider fully the issue of separate rates."  (Id. at 2.)

ESS LLC answered all parts of question 2, providing the following information: (a) the identity of the minority owner of the company and information regarding the transfer of that minority share on October 1, 2007 (id. at 2, Ex. A-2); (b) the membership of the Management Director Board and Director Board (id. at 2-3, Ex. A-3); (c) the ownership makeup of the companies with ownership interests in ESS LLC (id. at 3, Ex. A-3); ESS LLC's relationship with other producers of the subject merchandise (id. at 3); the memberships of ESS LLC and its owners and affiliates in other entities, business groups, or industry groups during the POR (id. at 3-4); that the owners of ESS LLC did not own or control other exporters of subject merchandise (id. at 4); that ESS LLC was not owned or controlled by a local or provincial government (id.); Vietnamese statutes indicating ESS LLC's legal ability to conduct business outside of government control (id. at 4-5, Exs. A-4 through A-7); and copies of ESS LLC's Vietnamese business licenses (id. at 5-6, Exs. A-8 through A-14.)  ESS LLC explained, in providing its business licenses, that a Vietnamese statute (provided at Ex. A-11) required "the re-registration of foreign

owned companies," and that ESS JVC "had to comply with these new laws and this required the new name of the company to become East Sea Seafoods Limited Liability Company." (Id. at 5). ESS LLC asserted that "[t]his change had no affect [sic] on the operations of East Sea Seafoods," as indicated by investment certificates attached as Exs. A-12 through A-14, which demonstrated that ESS JVC and ESS LLC "are the same company." (Id. at 5-6.) ESS LLC pointed out that ESS LLC "retained its tax identification number, all assets and liabilities, and all the legal rights, privileges, and obligations" under Vietnamese law. (Id. at 6.) ESS LLC indicated that "the name change and issuance of a new investment certificate was done on June 17, 2008" in order to comply with statutory obligations. (Id. at 7.) ESS LLC provided other detailed information in response to question 2, detailing ESS LLC's internal ownership, decision-making process, staffing, financing, profit distribution, etc., with no responses indicating control by the Vietnamese government. (Id. at 7-14.) ESS LLC also provided complete answers to the remaining questions, applicable to companies whether or not seeking a separate rate. (Id. at 15-26.) Those answers provided, *inter alia*, detailed information regarding ESS LLC's corporate structure, affiliations, facilities, legal structure, ownership, history, sales process, financial and accounting practices, and merchandise. (Id.) Regarding the date of sale for sales to the United States, ESS LLC indicated that the "date of sale is the invoice date, as that is the date on which the final

terms of sale are ultimately established, including final prices and quantities." (Id. at 18.)  These sales were all made to the first unaffiliated United States customer "by the sales staff of Piazza's Seafood World working closely with the president and vice-president of East Sea Seafoods." (Id. at 19.)  Sales documents that ESS LLC submitted with the Section A Response include a single sales invoice bearing a date after June 17, 2008, the date on which the change in name from ESS JVC to ESS LLC went into effect. (CR 10, Section A Response, Ex. A-16 at 2.)

On December 19, 2008, ESS LLC also submitted, "on behalf of East Sea Seafoods Limited Liability Company . . . as a voluntary respondent," copies of financial statements for itself and its affiliates to accompany the Section A Response.  (PR 49, CR 13.)  The statements contain, among other things, financial data from the beginning of 2008 through the end of September 2008, covering the periods before and after the name change from ESS JVC to ESS LLC on June 17, 2008.  (Id., Ex. 1.)

The record contains no indication that Commerce rejected ESS LLC's Section A Response or financial statements.

E.     ESS LLC Amended Separate Rate Certification

On March 23, 2009, ESS LLC submitted a letter and attached an amended Separate Rate Certification form.  (PR 80; Pl.'s 56.2 App. Tab 7 ("Amended Separate Rate Certification").)  The letter pointed out that the Separate Rate Certification filed by

ESS LLC on October 31, 2008 had noted "that the name of East Sea Seafoods had slightly changed from East Sea Seafoods Joint Venture Co. Ltd. to East Sea Seafoods Limited Liability Company." (Id. at 1.) ESS LLC attached the Amended Separate Rate Certification form, listing the separate rate requester and applicant as "East Sea Seafoods Joint Venture Co., Ltd., now known as East Sea Seafoods Limited Liability Company." (Id., Attach. 1 at 1, 3.) The record contains no indication that Commerce rejected ESS LLC's Amended Separate Rates Certification.

### F.     Preliminary Results

On September 4, 2009, Commerce published the preliminary results of the 5th AR. (Preliminary Results; see also Pl.'s 56.2 App. Tab 9.) The Preliminary Results list seven companies that "remain in this administrative review," including "East Sea Seafoods Joint Venture Co., Ltd. ('East Sea')." Id. at 45,806. ESS LLC is not mentioned in the Preliminary Results. See generally id.

Regarding the separate rate status, the Preliminary Results noted ESS JVC as one of the companies that submitted a separate rate certification. Id. at 45,807. In a footnote, Commerce stated "East Sea [defined earlier in the Preliminary Results as ESS JVC] addressed the separate rates section of the Department's questionnaire in its November 25, 2008, submission[7] as the certification it had submitted was no longer

---

[7] This refers to the Section A Response, which was explicitly filed by and on behalf of ESS LLC, as set forth *supra* at § II.D.

valid given that there had been a change in ownership and in name." Id., n.5. Commerce relied upon the submission of ESS LLC in finding an absence of governmental control over ESS JVC. Commerce specifically found that ESS LLC's Section A Response "support[ed] a finding of a *de jure* absence of government control" over ESS JVC based on '[a]n absence of restrictive stipulations associated with [ESS JVC's] business license" and legal authority "decentralizing control over" ESS JVC. Id. Again based on ESS LLC's Section A Response, Commerce also found an absence of *de facto* government control over ESS JVC, making specific findings that ESS JVC "sets its own export prices independent of the government"; "retains the proceeds from its sales" and controls its profits or losses; had management "with the authority to negotiate and bind the company in an agreement"; "the general managers are selected by the board of directors or company employees" and "appoint the . . . manager of each department"; and that "there is no restriction on [ESS JVC's] use of export revenues." Id. Consequently, Commerce preliminarily found that ESS JVC had "established *prima facie* that [it] qualif[ies] for [a] separate rate[.]" Id.

As to the separate rate applicable to ESS JVC, Commerce noted that it would ordinarily apply a weighted-average of the margins assigned to the examined companies (excepting zero, *de minimis*, and adverse facts based margins); however, because both examined companies received zero margins, Commerce would instead use

the "reasonable method" of "us[ing] the most recent rate calculated for the non-selected company in question unless we calculated in a more recent review a rate for any company that was not zero, *de minimis* or based entirely on facts available." Id. Commerce therefore applied a margin of $0.02 per kilogram to ESS JVC, "as it is the assigned rate from the most recently completed segment of the proceeding that is above *de minimis* and not based on adverse facts available." Id. A margin of $2.11 per kilogram was assigned as the Vietnam-wide entity rate, and was also set as the cash deposit rate for all companies "which have not been found to be entitled to a separate rate." Id. at 45,807-08, 45,811.

## G. Separate Rate and Successor-in-Interest Issues

### 1. Case Brief and Rebuttal

ESS LLC submitted a case brief responding to the Preliminary Results on October 30, 2009, in which ESS LLC stated that "[i]n the Preliminary Results . . . [Commerce] correctly found that ESS LLC was eligible for separate rate status" due to an absence of *de jure* and *de facto* government control. (PR 159, CR 45 ("Case Brief") at 1.) ESS LLC noted that Commerce had "failed to specifically address whether the Department will treat ESS LLC is [sic] the successor-in-interest to ESS JVC." (Id. at 2.) ESS LLC asserted that Commerce should find ESS LLC to be ESS JVC's successor-in-interest based on the evidence in the record showing that ESS LLC kept the same supplier, customer base,

operational management, tax identification number, assets, liabilities, legal rights,
privileges, and obligations as ESS JVC, with the only differences consisting of "a small
change in ownership interest and the legally required minor change in the company's
name." (Id. at 2-4.)

In a rebuttal brief submitted on November 10, 2009, CFA argued that Commerce
should deny ESS LLC's successorship claim and associated claim of entitlement to ESS
JVC's separate rate because ESS LLC did not pursue those claims via a changed-
circumstances review. (PR 168 ("CFA Rebuttal Brief") at 38.) CFA urged Commerce to
collect cash deposits on future entries by ESS LLC at the Vietnam-wide entity rate,
absent a changed-circumstances review, and, furthermore, to assess duties on POR
entries by ESS LLC at the Vietnam-wide entity rate as "this administrative review
covers only ESS JVC, and does not cover ESS LLC." (Id. at 39.) CFA also claimed that
"although this administrative review covers only ESS JVC, the company filed its
separate-rate certification and questionnaire responses on behalf of ESS LLC" and, for
that reason, Commerce would have grounds for finding that ESS JVC did not
demonstrate entitlement to a separate rate for cash deposit and assessment purposes.
(Id. n.110.)

Counsel for ESS LLC, by letter dated December 3, 2009, requested a meeting with
Commerce officials to discuss unspecified issues raised in the case briefs and rebuttals.

(PR 170.) No response from Commerce or notation of the occurrence of such a meeting appears in the administrative record.

### 2. Request for Successor-in-Interest Information and Responses

On January 11, 2010, Commerce sent ESS LLC a letter stating that the 5th AR had been initiated as to ESS JVC, but that due to the name change noted "in your separate rate certification,"[8] Commerce requested that ESS LLC submit comments and supporting documents addressing its management, production facilities, supplier relationships, and customer base both before and after the name change and ownership change "[i]n order for the Department to ensure that the operations of [ESS LLC] did not change significantly from what they had been prior to the change in name and ownership." (PR 173.) ESS LLC responded to Commerce's request on January 20, 2010 (PR 175, CR 47; Pl.'s 56.2 App. Tab 11.) In its response, ESS LLC indicated that, when the Vietnamese law requiring the name change was put in place in September 2006, ESS JVC was a joint venture between "its U.S. investor," Piazza's Seafood World, LLC ("PSW"), and Vietnamese company Toan Nhat Co., Ltd ("Toan Nhat"). (Id. at 1.) A change in minority ownership of ESS JVC occurred on October 8, 2007 when Toan Nhat sold its interest to another Vietnamese company, Atlantic Co., Ltd. ("Atlantic," an affiliate of Nam Viet Corp. by virtue of common ownership, management, and the

---

[8] The letter did not specify which separate rate certification.

marital relationship of the majority shareholders of the two companies.) (Id. at 3-4.)

ESS JVC was governed by two boards: a four-member Management Director Board, and a two-member Director Board. (Id., Ex. SA-3–SA-4.) When Atlantic acquired its minority ownership share in ESS JVC, the owner of Atlantic replaced one of the four members of the Management Director Board of ESS JVC. (Id.) Both members of the Director Board were also replaced at that time, one by the owner of Atlantic.[9] (Id. at 4-5, Ex. SA-3–SA-4.) Neither ESS JVC nor ESS LLC owned production facilities before or after the ownership and name changes (id. at 2, 5), and both ESS JVC and ESS LLC purchased subject merchandise for export from supplier Atlantic during the POR (id. at 3, 5). PSW was the sole customer of both ESS JVC and ESS LLC during the POR, and PSW then made the first sales to unaffiliated United States customers; there was no change in PSW's customer base during the POR. (Id. at 3, 5, Ex. SA-2.)

CFA responded to the Supplemental Separate Rate Certification on February 1, 2010, reiterating the arguments made in the November 10, 2009 CFA Rebuttal Brief. (PR 176 at 2-4.) CFA argued, alternatively, that the change in minority ownership was significant because it resulted in a new closeness in relations with Atlantic's affiliate Nam Viet. (Id. at 6.) CFA also contended that ESS LLC's supplier base had changed

---

[9] One of the members of the Director Board had served concurrently on the Management Director Board prior to the ownership change, and retained that position after losing the spot on the Director Board. (Pl.'s 56.2 App. Tab 11 at 4-5, Exs. SA-3–SA-4.)

significantly from that of ESS JVC, which was considered a producer of subject merchandise in the third administrative review (the last review conducted as to ESS JVC) due to a tolling relationship with its processor. (Id. at 7-8.) CFA also argued that the majority of ESS JVC's management structure changed after the shift of minority ownership, making ESS LLC's successorship claim questionable. (Id. at 8-9.) Finally, CFA argued that, if Commerce upheld ESS LLC's successorship claim, ESS LLC should only succeed to ESS JVC's cash deposit rate for exports of which it was "both the producer and the exporter," and should otherwise be subject to cash deposit at the Vietnam-wide entity rate. (Id. at 10.)

On February 16, 2010, ESS LLC responded, arguing that the percentage ownership of ESS JVC which changed hands was too small to be significant. (PR 180 at 2.) ESS LLC also claimed that its supplier base was essentially unchanged, despite abandonment of ESS JVC's prior tolling relationship with its processor, noting that the factors of production underlying ESS LLC's current production (had they been collected) would have come from the same companies from which factors of production were collected for ESS JVC in the third administrative review. (Id.) (However, a file memorandum notes that ESS LLC's counsel confirmed by phone on February 18, 2010 that ESS LLC erred in asserting that the final results of the third administrative review contained "information regarding a relationship between certain Vietnamese

companies." (PR 181.)) As to management, ESS LLC stressed that Salvadore Piazza remained in control of the company, both before and after the other changes. (PR 180 at 3.)

III. **Final Results**

On March 10, 2010, Commerce issued a memorandum detailing the issues and decisions of the 5th AR. (PR 185, Issues and Decision Memorandum for the Final Results of 5th Administrative Review and 4th New Shipper Review:  Certain Frozen Fish Fillets from the Socialist Republic of Vietnam ("I&D Memo").) Comment 7 of the I&D Memo, headed "Rate for East Sea Seafood [sic] JVC/East Sea Seafood [sic] LLC," describes Commerce's findings and decisions regarding ESS LLC's successorship-in-interest to ESS JVC and the appropriate cash deposit and assessment rates for ESS JVC and ESS LLC. (Id. at 35-40.) Commerce stated that it "granted ESS JVC a separate rate" in the Preliminary Results despite "noting that the [October 31, 2008 Separate Rate Certification] was not valid due to the change in ownership and name." (Id. at 37.) Commerce stated that it did so by "relying on the ESS LLC's [sic] Section A questionnaire response." (Id.) The I&D Memo characterized ESS LLC's successorship claim as follows:

> Essentially, ESS JVC, through its SR certification,[10] and its voluntary response to Section A of the Department's antidumping duty administrative review questionnaire,[11] claimed that ESS JVC's operations remained unaffected such that ESS LLC and ESS JVC are the same company.

(Id. at 38.)  After summarizing the record, Commerce stated its finding on the successorship issue:

> [W]e find that although ESS JVC/ESS LLC did not undergo changes in the customer base, the changes in ownership, coupled with the changes in management and supplier base, are so significant that we do not find that ESS LLC is the successor-in-interest to ESS JVC.

(Id. at 39.)  Specifically, Commerce found the following changes significant:  (a) the ownership changes, because the new owner's involvement in production of subject merchandise "may potentially affect how the Department would collect factors of production if ESS LLC were to be individually examined"; (b) the management changes, because ESS LLC, unlike ESS JVC, shared board members with companies involved in production or sale of the subject merchandise; and (c) the production/supplier changes, because the shift from producer (ESS JVC) to reseller (ESS LLC) resulted in "vastly different" costs of production.  (Id. at 39-40.)

---

[10] Referring to the October 31, 2008 Separate Rate Certification filed by ESS LCC on its own behalf.

[11] Referring to the November 25, 2008 Section A Response filed by ESS LLC on its own behalf.

After concluding that ESS LLC was not the successor-in-interest to ESS JVC, Commerce made findings regarding the rates for the two companies. Commerce found that, "given the separate rates certification from ESS LLC essentially contained all the necessary information with respect to ESS JVC, . . . ESS JVC should be assigned a separate rate for these final results, but only to the effective date of the name change, June 17, 2008." (Id. at 40.) The Department determined that it would "instruct CBP to assess $0.02 per kilogram on all appropriate [ESS JVC] entries . . . made during the POR up to June 17, 2008," and that "[a]ny entries made after June 17, 2008, by ESS JVC will be liquidated at the Vietnam-wide entity rate of $2.11 per kilogram, because this company ceased to exist." (Id.) As to ESS LLC, Commerce determined that it "shall instruct CBP to assess $2.11 per kilogram on all appropriate entries . . . made during the POR as it is currently not under administrative review and remains part of the Vietnam–wide entity." (Id.)

The Final Results published on March 17, 2010 explicitly incorporated the analysis of all issues discussed in the I&D Memo. See Final Results, 75 Fed. Reg. at 12,727. The Final Results chart setting out dumping margins contained a footnote specifying that the Vietnam-wide entity "includes ESS LLC," referencing Comment 7 of the I&D Memo. Id. at 12,728. The Final Results restated the I&D Memo determinations regarding the rate instructions that Commerce would issue to CBP regarding

assessment of ESS JVC and ESS LLC entries, again referring to Comment 7 of the I&D

Memo.  Id.  As to cash deposit rates, the Final Results stated that exporters not currently

or previously reviewed, nor supplied by manufacturers currently or previously

reviewed, would be the Vietnam-wide entity rate of $2.11.  Id.  ESS JVC's "cash deposit

rate for any future entries made under the name of ESS JVC will be $2.11 per kilogram"

because Commerce "determined that ESS JVC ceased to exist as of June 17, 2008."  Id.

### JURISDICTION, STANDING & STANDARD OF REVIEW

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1581(c) which

authorizes the court to hear "any civil action commenced under section 516A of the

Tariff Act of 1930."  28 U.S.C. § 1581(c) (2006).[12]  Section 516A of the Tariff Act of 1930

("the Act"), codified at 19 U.S.C. § 1516a, permits the court to review, among other

things, "a final determination . . . by the administering authority . . . under section 1675

of this title," which includes a final determination in an administrative review.  19

U.S.C. § 1516a(2)(B)(iii); see also 19 U.S.C. § 1675(a).  A challenge to such a

determination may be brought by "an interested party who is a party to the proceeding

in connection with which the matter arises."  19 U.S.C. § 1516a(2)(A)(ii).  An interested

party, as defined for the purposes of the Act, includes "a foreign manufacturer,

producer, or exporter, or the United States importer, of subject merchandise."  19 U.S.C.

---

[12] All citations to the United States Code refer to the 2006 edition.

§ 1677(9)(A). ESS LLC is an exporter of the subject merchandise, and is therefore an interested party.

The term "party to the proceeding" is not defined in the statute. Commerce has promulgated a set of definitions that, among other things, define "terms that appear in the Act but are not defined in the Act." 19 C.F.R. § 351.102(a)(1) (2009). In these definitions, Commerce has determined "party to the proceeding" to mean "any interested party that actively participates, through written submissions of factual information or written argument, in a segment of a proceeding." 19 C.F.R. § 351.102(b)(36). Because ESS LLC participated actively in the proceeding before the agency by submitting both factual information and written argument, ESS LLC is a party to the proceeding of the 5th AR, and has standing to bring this case. See 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(2)(A)(ii).

In reviewing Commerce's final determination in an administrative review, the Court is required to "hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1), (B)(i). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Huaiyin Foreign Trade Corp. (30) v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence

requires more than a mere scintilla, but is satisfied by something less than the weight of the evidence." <u>Altx, Inc. v. United States</u>, 370 F.3d 1108, 1116 (Fed. Cir. 2004) (internal citations and quotation marks omitted).

ANALYSIS

I.    <u>Commerce's Successor-in-Interest Analysis is In Accordance With Law and Supported by Substantial Evidence on the Record</u>

A.    **Positions of the Parties on Successorship**

1.    <u>ESS LLC</u>

ESS LLC's main argument is that the Department's successorship analysis ignored evidence that the company's operations remained unchanged right before and after the name change, and instead improperly connected the change in name from ESS JVC to ESS LLC with (a) alterations in minority ownership and management that occurred months earlier, and (b) the supplier relationships of ESS JVC at the time of the 3rd AR, despite ESS JVC and ESS LLC having shared the same supply arrangements during the entire POR of the 5th AR. (Pl's 56.2 Mem. at 7-8.) Alternatively, ESS LLC argues that, even if Commerce properly compared ESS LLC as of the time of the name change with ESS JVC as it existed as far back as the 3rd AR, those changes were not significant enough to support Commerce's negative successorship finding. (<u>Id.</u> at 9-16.) Plaintiff points out that, during the PORs for both the 3rd AR and the 5th AR, PSW owned over 90% of the company, Salvadore Piazza remained president with purchasing

and selling control, and similar patterns of supplier affiliation and, as a consequence, the same factors of production, applied. (Id.)

### 2. The United States and CFA

The United States argues that Commerce, in conducting the successorship analysis, properly considered all of the changes occurring during the span of time since the 3rd AR, culminating in the name change to ESS LLC, and correctly determined, based on substantial evidence in the record, that the changes were significant enough that ESS LLC was not the successor-in-interest to ESS JVC. (Def.'s 56.2 Opp. at 12-17.) Defendant-Intervenor CFA reiterates these arguments. (Def.-Int.'s 56.2 Opp. at 6-14.) Defendant contends that, if anything, ESS JVC benefitted from this analysis, since Commerce could have found from the evidence that ESS JVC had become a new entity *prior* to the name change, and consequently could have applied the Vietnam-wide entity rate to ESS JVC as of an earlier point in time. (Def.'s 56.2 Opp. at 14.)

### B. Analysis

The first issue for the Court to resolve is whether Commerce's determination that ESS LLC is not the successor-in-interest to ESS JVC is supported by substantial evidence in the record and is otherwise in accordance with law. It is.

In an administrative review, Commerce is required to "review, and determine . . . the amount of any antidumping duty" and publish notice of "any duty to be assessed

[and] estimated duty to be deposited[.]" 19 U.S.C. § 1675(a)(1). Commerce has explained that the purpose of conducting a successor-in-interest analysis during an administrative review is to determine "the appropriate rate to be assigned to entities affected by . . . some . . . change which raises the questions of the company's status in the proceeding." Brass Sheet and Strip from Canada; Final Results of Antidumping Duty Administrative Review, 57 Fed. Reg. 20,460, 20,461 (May 13, 1992).

In this case, the change that precipitated the successor-in-interest determination was the change in name from ESS JVC to ESS LLC. Presumably, once the name had changed, ESS LLC would no longer be able to obtain the cash deposit rate assigned to ESS JVC in the third administrative review, unless explicitly permitted to do so by virtue of a favorable successor-in-interest analysis. Plaintiff has urged that in conducting the successor-in-interest determination, Commerce should have compared the newly formed ESS LLC to ESS JVC as it existed immediately prior to the name change on June 17, 2008. Commerce, however, elected to compare ESS LLC with ESS JVC as it existed the last time it was subject to individual examination by the agency—in the third administrative review. See I&D Memo at 37-40. The decision to compare ESS LLC with ESS JVC from the 3rd AR is implicitly evident from the bases upon which Commerce reached a negative determination in the successor-in-interest analysis. In reaching a negative successorship determination on the basis of the changes in

ownership, management, and supplier relationship, which all took place prior to the name change, but subsequent to the 3rd AR, Commerce has given a clear indication of the starting place for its comparison. See id. at 38-39.

The Court sees no reason why the decision to compare the newly named entity with the entity as it existed when last examined is "otherwise contrary to law." See 19 U.S.C. § 1516a(b)(1)(B)(i). The successor-in-interest analysis was not explicitly created by statute or by regulation, but is an agency practice designed to facilitate the proper implementation of the antidumping laws. Because "a company will argue successorship, or lack thereof, depending on the particular consequences of its claim on its antidumping duty deposit rate," Commerce needs to have a reasonable method for conducting the analysis that will lead to a fair result in light of "the totality of circumstances." Certain Brass Sheet, 57 Fed. Reg. at 20,461. The question in a successor-in-interest determination is whether an alleged successor should qualify for the cash deposit rate last calculated for the alleged predecessor. The Court finds that the decision to compare ESS LLC with the last version of the alleged predecessor that had been subject to agency review is patently reasonable. Moreover, this Court is obligated to extend "tremendous deference to the expertise of the Secretary of Commerce in administering the antidumping law," when it comes to Commerce's "identifying, selecting and applying methodologies to implement the dictates set forth

in the governing statute." Fujitsu General Ltd. v. United States, 88 F.3d 1034, 1039 (Fed. Cir. 1996) (internal quotations omitted). Accordingly, the Court finds this determination to be in accordance with law.

In addition to finding the methodology lawful, the Court also finds that Commerce's particular determination in this successor-in-interest analysis is supported by substantial factual evidence in the record. Plaintiff does not dispute the existence of the changes identified by the agency between ESS JVC as it existed in the third administrative review and ESS LLC. To the contrary, Plaintiff voluntarily supplied Commerce with information regarding each of these changes in its Separate Rate Certification, Section A Response, and Amended Separate Rate Certification, and in its responses to the successor-in-interest query from the agency. Seeing no factual dispute, the Court finds that evidence in the record documenting the change in ownership, the change in management, and the change in supplier arrangement constitutes more than a mere scintilla of evidence in support of the agency's determination that ESS LLC is not a successor-in-interest to ESS JVC as it existed at the time of the third administrative review. See Altx, 370 F.3d at 1116.

## II. Commerce's Decision To Assign Plaintiff The Vietnam-Wide Entity Rate Is Not In Accordance With Law

The second issue for the Court to resolve is whether the agency's decision to assign ESS LLC a cash deposit rate equal to the Vietnam-wide entity rate of $2.11/kg in the Final Results was in accordance with law.

### A. Positions of the Parties on Proper Dumping Rate for ESS LLC

#### 1. ESS LLC

ESS LLC argues that Commerce's determination to assign it the Vietnam-wide entity rate as a cash deposit rate was not in accordance with law because the Vietnam-wide entity rate was based on adverse facts available ("AFA"); but ESS LCC did not fail to cooperate with Commerce. (Pl.'s 56.2 Mem. at 17-18.) ESS LLC asserts that pursuant to 19 U.S.C. § 1677e(b), Commerce must find that a party failed to cooperate before an AFA rate may be applied to that party. (Id.) ESS LLC also contends that Commerce's assignment of the Vietnam-wide entity rate to ESS LLC was not supported by substantial evidence, since Commerce accepted and relied upon evidence submitted by—and equally applicable to—ESS LLC when it found that ESS JVC was not under *de jure* or *de facto* government control, but ignored the effect of that evidence as to ESS LLC. (Id. at 18-20.) ESS LLC also argues that it was properly subject to the 5th AR, and was not required to submit two requests for review (one under the name ESS JVC and one under the name ESS LLC) in response to the Notice of Initiation. (Pl.'s Reply at 4-5.)

ESS LLC points out that Commerce accepted and relied upon submissions from ESS LLC throughout the review, and claims that Commerce "is thus estopped from arguing now that all such submissions were invalid or that [ESS LLC] was not under review." (Id. at 5.)

> 2. United States and CFA

Defendant and CFA argue that Commerce's application of the Vietnam-wide entity rate to ESS LLC upon its negative successorship determination was not an application of AFA, but was instead the operation of a presumption of government control that applies to all NME companies that do not rebut that presumption by requesting review and providing evidence of a lack of government control. (Def.'s 56.2 Opp. at 17-20 (citing Transcom, Inc. v. United States, 294 F.3d 1371 (Fed. Cir. 2002) and Sigma Corp. v. United States, 117 F.3d 1401 (Fed. Cir. 1997); Def.-Int.'s 56.2 Opp. at 15-20.) Furthermore, both Defendant and CFA assert that ESS LLC's failure to file its own request for review (in addition to the request filed by ESS JVC) meant that ESS LLC was no longer subject to the review once Commerce determined that it was not the successor-in-interest to ESS JVC. (Def.'s 56.2 Opp. at 18-20; Def.-Int.'s 56.2 Opp. at 15-19.) The government and CFA both state that Commerce "had no choice but to apply" the Vietnam-wide entity rate to ESS LLC—a company that had not requested review and did not inherit ESS JVC's separate rate through succession. (Def.'s 56.2 Opp. at 19;

Def.-Int.'s 56.2 Opp. at 17.) The government characterizes this treatment as "a determination that the company has not met its burden of demonstrating that it is separate from the government entity," and maintains that Commerce was not obligated to treat ESS LLC as if it had applied for a separate rate by accepting its Section A Response. (Def.'s 56.2 Opp. at 19-20.)

## B. Analysis

For the reasons set forth below, the Court finds unlawful Commerce's decision to assign ESS LLC the Vietnam-wide entity rate without first considering evidence on the record that specifically addresses the extent to which ESS LLC is *de facto* and *de jure* independent from the control of the government of Vietnam.

The normal consequence of a negative determination in a successor-in-interest analysis is that the entity found not to be the successor-in-interest may not post cash deposits at the rate calculated for the alleged predecessor. In the case of an antidumping duty order imposed on goods from a market economy, Commerce generally applies the "all others rate" to the non-succeeding entity by default.[13] In the case of a nonmarket economy, Commerce typically applies the country-wide

---

[13] See, e.g., Notice of Preliminary Results of Antidumping Duty Changed Circumstances Review: Polychloroprene Rubber from Japan, 69 Fed. Reg. 61,796, 61,798 (Oct. 21, 2004) (preliminarily finding that SDK was not the successor-in-interest to SDEM/DDE, and that "SDK should not be given the same antidumping duty treatment as [SDEM/DDE]," and that SDK, as a new entity, "should continue to be assigned as its cash deposit rate the 'all others' rate").

antidumping rate as a default rate.[14]  In this case, for example, where Commerce found alleged successor ESS LLC not to qualify for the rate previously assigned to alleged predecessor ESS JVC, Defendant argues that Commerce had "no choice" but to apply the Vietnam-wide entity rate, as this was the "only possible option" available.  (Def.'s 56.2 Opp. at 19.)

The application of a NME antidumping rate (such as the Vietnam-wide entity rate in the current proceeding) to a particular exporter is premised on the "rebuttable presumption that all companies within the NME country are subject to government control and, thus, should be assessed a single antidumping duty rate."  Preliminary Results, 74 Fed. Reg. at 45,806.  The Court of Appeals for the Federal Circuit ("CAFC") has, to some extent, sanctioned the use of this rebuttable presumption.[15]  Sigma Corp. v.

---

[14] See, e.g., Frozen Warmwater Shrimp From Vietnam: Notice of Preliminary Results of Antidumping Duty Changed Circumstances Reviews, 74 Fed. Reg. 31,698, 31,700 (July 2, 2009) (preliminarily finding that CAFISH was not the successor-in-interest to CATACO, and thus "should not receive CATACO's current separate rate and that the cash deposit rate for . . . CAFISH should continue to be the current Vietnam-wide rate") (unchanged in final results, see 74 Fed. Reg. 42,050, 42,051); Wooden Bedroom Furniture from the People's Republic of China: Preliminary Results of Antidumping Duty Changed Circumstances Review, 72 Fed. Reg. 41,492, 41,495 (July 30, 2007) (preliminarily finding that Tradewinds International is not the successor-in-interest to Fortune Glory, "and, therefore, should not be given the same antidumping duty treatment as Fortune Glory") (unchanged in final results, see 72 Fed. Reg. 60,812, 60,813-14.).

[15] The Court notes that in most, if not all, cases involving a country-wide NME antidumping duty rate, the country-wide margin has been calculated using adverse inferences.  See, e.g., Certain Frozen Fish Fillets From the Socialist Republic of Vietnam:

<u>United States</u>, 117 F.3d 1401, 1405 (Fed. Cir. 1997) ("[I]t was within Commerce's authority to employ a presumption of state control for exporters in a nonmarket economy, and to place the burden on the exporters to demonstrate an absence of central government control.")  The CAFC later construed its holding in <u>Sigma</u> by emphasizing the rebuttability of the presumption:

> Although in <u>Sigma</u> we upheld Commerce's presumption of state control, which shifted the burden to the companies under review to demonstrate that they were independent from the state-controlled entity, we recognized that the presumption is rebuttable, and that **a party that is subject to the presumption has a right to attempt to rebut it.**

<u>Transcom, Inc. v. United States</u>, 182 F.3d 876, 883 (Fed. Cir. 1999) (emphasis added).

The issue raised in this case, therefore, is whether the application of the Vietnam-wide

---

<u>Final Results of Antidumping Duty Administrative Review and Partial Rescission</u>, 73 Fed. Reg. 15,479, 15,480 (Mar. 24, 2008) ("the Department assigned a rate based on the use of total adverse facts available ('AFA') to the Vietnam-Wide Entity").  The Court does not believe that either the CAFC or the CIT have ever considered the extent to which the application of the rebuttable presumption, described herein, may conflict with 19 U.S.C. § 1677e(b).  This statute states that "if [Commerce] **finds** that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available."  19 U.S.C. § 1677e(b) (emphasis added).

It seems that the application of an antidumping duty rate that has been based on AFA to certain companies by the operation of a "rebuttable presumption" of government control, without the finding of failure to cooperate required by 1677e(b), may be *ultra vires*.  The Court need not reach this question in the case before it and declines to do so.

entity rate to ESS LLC without considering ESS LLC's evidence attempting to rebut the presumption of state control was appropriate. It was not.

In Transcom, the CAFC held that parties not named in the notice of initiation of an administrative review could not be subjected to the presumption that they were under state control as a result of the administrative review, because those parties did not have notice that they would be subjected to the presumption, and therefore, could not have attempted to rebut it. Transcom, 182 F.3d at 883-84. In light of Sigma and Transcom, it would appear that whenever a company from a non-market economy is seeking a successor-in-interest analysis, the alleged successor must have an opportunity to rebut the presumption of state control, because the alleged successor faces the prospect of being subjected to the presumption that it is controlled by the state entity if it is found not to be the successor-in-interest, and receives the NME country-wide cash deposit rate. This would seem to be the case regardless of whether the successor-in-interest analysis is sought in a changed circumstances review or in an administrative review.

Under the facts of this case, however, the question of whether Commerce should give an alleged successor the opportunity demonstrate independence from the state entity is not hypothetical. Instead, Commerce refused to consider the effect on ESS LLC of abundant evidence in the administrative record which would tend to support ESS

LLC's attempts to rebut that presumption. This refusal is inexcusable. The evidence appears in the form of (a) the Separate Rate Certification submitted by ESS LLC on October 31, 2008 (PR 34, CR 8), (b) the separate rates portion of the Section A Response submitted by ESS LLC on November 25, 2008 (PR 41, CR 10), (c) ESS LLC's financial statements, submitted on December 19, 2008 (PR 49, CR 13), and (d) the Amended Separate Rate Certification submitted on be half of ESS LLC and ESS JVC on March 23, 2009 (PR 80), and is unquestionably part of the administrative record. Moreover, the agency relied upon this very evidence, submitted by ESS LLC, in finding in the Preliminary Results that ESS JVC was *de jure* and *de facto* independent of the Vietnamese government during the 5th POR. Commerce's application of the presumption of state control, without considering abundant record evidence rebutting that very presumption, pushed legal fiction into the realm of legal fantasy. Doing so was not in accordance with law.

Remarkably, Defendant takes the position that there was *nothing* ESS LLC could have done to rebut the presumption in this case. Defendant claims that ESS LLC could not have requested a separate rate, presumably via a separate rate application, "because it never requested to be reviewed" in the 5th AR. (Def.'s 56.2 Opp. at 19-20.) Defendant states that it would not consider the separate rates portion of ESS LLC's Section A Response to evaluate government control, because after reaching the negative

successor-in-interest determination, ESS LLC "was no longer properly part of the

review." (Id. at 20.) Defendant offers no explanation why it did not consider the

Separate Rate Certification submitted by ESS LLC, or the Amended Separate Rate

Certification, submitted by both ESS LLC and ESS JVC. Ostensibly, though, Commerce

will not accept a separate rate certification from an entity that has not previously

received a separate rate. Commerce's obstinance left Plaintiff in a situation where the

presumption was irrefutable rather than rebuttable.

When a successor-in-interest analysis has been sought in the course of an

administrative review, such a review has typically, if not universally, been conducted

when both the alleged predecessor and the alleged successor have been named in the

notice of initiation for that administrative review.[16] When asked by ESS LLC, an alleged

---

[16] See Chlorinated Isocyanurates from Spain: Preliminary Results of Antidumping Duty Administrative Review, 72 Fed. Reg. at 37,191 (July 9, 2007) (finding in preliminary results of administrative review that Aragonesas Industrias y Energía S.A. "Aragoneses" was the successor-in-interest to Aragonesas Delsa S.A. ("Delsa")), and Initiation of Antidumping And Countervailing Duty Administrative Reviews and Request for Revocation in Part, 71 Fed. Reg. 42,626, 42,627 (July 27, 2006) (initiating said administrative review as to both Aragoneses and Delsa); see also Stainless Steel Bar From Italy: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Rescission of Review, 70 Fed. Reg. 17,656, 17,657 (April 7, 2005) (finding UGITECH S.A. ("Ugitech") the successor-in-interest to Ugine-Savoie Imphy S.A. ((Ugine-Savoie")), and Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 69 Fed. Reg. 30,282 (May 27, 2004) (initiating said administrative review as to both Ugine-Savoie and Ugitech); see also Purified Carboxymethylcellulose from Finland; Notice of Preliminary Determination of Antidumping Duty Administrative Review, 72 Fed. Reg. 44,106, 44,107-08 (Aug. 7, 2007) (finding CP Kelco OY the successor-in-interest to Noviant OY),

successor that was not named in the notice of initiation, to conduct a successor-in-interest analysis in this administrative review, Commerce might have declined, but it did not. Rather than informing ESS LLC that it would need to separately request a changed circumstances review because it was not named in the notice of initiation, and therefore not properly under administrative review, Commerce agreed to determine whether ESS LLC was the successor-in-interest to ESS JVC. Commerce accepted into the record repeated submissions from ESS LLC containing both factual information and legal argument, conferring "party to the proceeding" status to ESS LLC. Commerce specifically solicited additional information from ESS LLC (and the petitioners) pertaining to the successorship question, and set forth a reasoned explanation of the results of its analysis in the I&D Memo. After permitting and soliciting the participation of ESS LLC in this administrative proceeding for more than 15 months, Commerce cannot now act as if ESS LLC is a total stranger.

Furthermore, Commerce explicitly found in the Preliminary Results that ESS JVC, as it existed in the 5th POR, was not under *de jure* or *de facto* control of the Vietnamese government. While the changes in supplier relationship, ownership and management affected the successor-in-interest determination, these changes were

---

and Initiation of Antidumping and Countervailing Duty Administrative Reviews and Requests for Revocation in Part, 71 Fed. Reg. 51,573, 51,574 (Aug. 30, 2006) (initiating administrative review as to both Noviant Oy and CP Kelco Oy).

irrelevant to the agency's decision to grant ESS JVC a separate rate in this administrative review. The Court has not seen any evidence in the record, or heard any argument from the parties, suggesting that, attendant with the name change on June 17, 2008, ESS LLC fell under government control. To the contrary, the evidence suggests that the name change on June 17, 2008 was not, itself, associated with any change in the extent of government control over ESS JVC's, or ESS LLC's, operations. For the foregoing reasons, then, the Court finds that Commerce's decision not to determine whether ESS LLC had made a showing that it was entitled to a separate rate is not in accordance with law.

### III. Liquidation of ESS JVC Entries After June 17, 2008 at ESS LLC Rate Was Unlawful

The final issue for the Court to resolve is whether Commerce's decision to order liquidation of entries by ESS JVC at the rate assigned to ESS LLC for entries made after the effective date of the name change is supported by substantial evidence in the record and otherwise in accordance with law.

#### A. Positions of the Parties on ESS JVC Liquidation Rate

##### 1. ESS LLC

ESS LLC contends that Commerce wrongly determined to instruct CBP to assess the Vietnam-wide entity rate on entries made by ESS JVC retroactive to the date of the name change. (Pl.'s 56.2 Mem. at 20.) ESS LLC points out that shipments exported by

ESS JVC up to the date of the name change would have entered the United States weeks later, and contends that ESS JVC's $0.02 rate should apply to all ESS JVC entries shipped from Vietnam on or before June 17, 2008. (Id.)

2. United States and CFA

Defendant did not address this argument. CFA opposes ESS LLC's position on the grounds that the argument was not raised before the agency, and that ESS LLC did not cite record evidence regarding the dates on which ESS LLC exports first entered the United States for consumption. (Def.-Int.'s 56.2 Opp. at 20.)

**B.    Analysis**

The Court finds that the decision of Commerce to order liquidation of entries by ESS JVC at the rate assigned to ESS LLC for all entries made after the effective date of the name change is not supported by substantial evidence in the record or otherwise in accordance with law.

In the Final Results, Commerce stated that "[a]ny entries made after June 17, 2008, by ESS JVC will be assessed at the Vietnam-wide entity rate of $2.11 per kilogram." Final Results, 75 Fed. Reg. at 12,728. In the I&D Memo, Commerce explains that it reached this decision because, after this date, ESS JVC "ceased to exist." I&D Memo at 40. The Court does not find any evidence in the record to support Commerce's decision to treat entries made by ESS JVC, after the date of the name

change, as somehow not the province of ESS JVC. (See generally CR 1, 4.) Without a more reasoned explanation as to why entries made by ESS JVC should be treated as if made by ESS LLC, the Court cannot sustain this aspect of the Final Results, as it is not supported by substantial evidence and is not otherwise in accordance with law.

## IV. Remand

On remand, the agency need not tamper with the successor-in-interest analysis, which has been sustained. It must, however, consider all of the evidence in the administrative record pertaining to ESS LLC's *de jure* and *de facto* independence from the Vietnamese government, as detailed by the Court above, and make a finding as to whether ESS LLC has rebutted the presumption of government control. Upon a finding that ESS LLC is independent of the control of the Vietnamese government, Commerce must assign a separate cash deposit rate to ESS LLC that is supported by substantial evidence and is otherwise in accordance with law, and shall immediately issue liquidation instructions to CBP adjusting the cash deposit rate for ESS LLC accordingly. Any finding by Commerce that ESS LLC is not independent of the control of the Vietnamese government must explain why the presumption has not been rebutted, and why the evidence found sufficient in the Preliminary Results to establish ESS JVC's independence from the Vietnamese government, which was submitted by ESS LLC, is insufficient to establish the same for ESS LLC. Additionally, Commerce must provide a

reasoned explanation, supported by evidence in the record, for why entries shipped by ESS JVC but entered after the effective date of the name change should be treated as entries made by ESS LLC. If Commerce determines on remand that all entries shipped by ESS JVC should be given the rate assigned to ESS JVC, it shall amend the liquidation instructions accordingly. Because the unlawful Final Results appear to have placed Plaintiff in imminent danger of suffering severe economic harm, Commerce is instructed to file its remand results no later than April 27, 2010.

### CONCLUSION

For the reasons given above, upon consideration of Plaintiff's Motion for Judgment on the Agency Record, Defendant's and Defendant-Intervenor's responses thereto, Plaintiff's reply, and Defendant's Surreply, and upon careful consideration of the administrative record, this Court affirms in part and remands in part the Final Results. It is hereby

**ORDERED** that Plaintiff's Motion for Judgment on the Agency Record is PARTIALLY GRANTED and PARTIALLY DENIED; and it is further

**ORDERED** that Commerce's determination in the Final Results of the fifth administrative review of the antidumping duty order on Certain Frozen Fish Fillets from the Socialist Republic of Vietnam that ESS LLC is not the successor-in-interest to ESS JVC is AFFIRMED, and it is further

**ORDERED** that the Final Results are REMANDED to Commerce; and it is further

**ORDERED** that Commerce must consider all evidence in the administrative record pertaining to ESS LLC's *de jure* and *de facto* independence from the Vietnamese government, and make a finding as to whether ESS LLC has rebutted the presumption of government control; and it is further

**ORDERED** that if Commerce finds that ESS LLC is independent of the control of the Vietnamese government, it must assign to ESS LLC a cash deposit rate separate from the Vietnam-wide entity rate that is supported by substantial evidence and is otherwise in accordance with law; and it is further

**ORDERED** that if Commerce finds that ESS LLC is not independent of the control of the Vietnamese government based on the evidence in the record, it must explain why the presumption has not been rebutted, and it must explain why the evidence cited in the Preliminary Results that was sufficient to establish ESS JVC's independence from the Vietnamese government is insufficient to establish that ESS LLC is independent of the Vietnamese government; and it is further

**ORDERED** that Commerce must either provide a reasoned explanation, supported by evidence in the record, for why it should treat entries made by ESS JVC, after the effective date of the name change, as entries made by ESS LLC, or alternatively

shall find that all entries made by ESS JVC are given the rate of $0.02 per kilogram assigned to ESS JVC in the Final Results; and it is further

**ORDERED** that Commerce shall file with this Court the remand results no later than **Tuesday April 27, 2010**; and it is further

**ORDERED** that Commerce shall issue new liquidation instructions to U.S. Customs and Border Protection in accordance with the remand results no later than **Tuesday, April 27, 2010**; and it is further

**ORDERED** that Plaintiff may file comments with this Court indicating whether they are satisfied or dissatisfied with the remand results no later than **Friday, April 30, 2010**; and that Defendant and Defendant-Intervenor may file responses to Plaintiffs' comments no later than **Wednesday, May 5, 2010**; and it is further

**ORDERED** that the remaining component of Plaintiff's Motion for Preliminary Injunction is denied as moot.

    /s/Gregory W. Carman
Gregory W. Carman, Judge

Dated:  April 19, 2010
    New York, NY