**Slip Op. 10–62**

## UNITED STATES COURT OF INTERNATIONAL TRADE

EAST SEA SEAFOODS LLC,

          Plaintiff,

     v.

UNITED STATES,

          Defendant,

      and

CATFISH FARMERS OF AMERICA,

          Defendant-Intervenor.

**Before: Gregory W. Carman, Judge**

Court No.  10-00102

*[Remand Results are set aside in part and sustained in part, and judgment is entered for Defendant.]*

Dated: May 27, 2010

Arent Fox LLP (John M. Gurley, Nancy Aileen Noonan, Diana Dimitriuc Quaia, Matthew L. Kanna), for Plaintiff.

Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Claudia Burke, Courtney S. McNamara); David W. Richardson, of counsel, Office of the Chief Counsel for Import Administration, Department of Commerce, for Defendant.

Akin Gump Strauss Hauer & Feld LLP  (Valerie A. Slater, Jarrod Mark Goldfeder, Nicole Marie D'Avanzo, Natalya Daria Dobrowolsky, Jaehong David Park), for Defendant-Intervenor.

## OPINION & ORDER

**CARMAN, JUDGE:** In this case, Plaintiff East Sea Seafoods LLC ("ESS LLC" or "Plaintiff") challenged the final results of the fifth administrative review of an antidumping duty order on certain frozen fish fillets from Vietnam. Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results of the Antidumping Duty Administrative Review and New Shipper Reviews, 75 Fed. Reg. 12,728 (Mar. 17, 2010) (the "Final Results"). In an opinion dated April 19, 2010, this Court affirmed the U.S. Department of Commerce's ("Commerce" or "Defendant") determination that ESS LLC was not the successor-in-interest to East Sea Seafoods JVC ("ESS JVC").[1] East Sea Seafoods LLC v. United States, 34 CIT __, Slip Op. 10-42 at 30-33 (April 19, 2010) ("*East Sea 1*"). The Court also found that it was unlawful for Commerce to treat ESS LLC as if it was a part of the Vietnam-wide entity without first considering abundant record evidence pertaining to Plaintiff's independence from the Vietnamese government. Before the Court are the Final Results of Redetermination ("*Remand Results*") filed by Commerce on April 27, 2010. For the reasons set forth below, the *Remand Results* are held unlawful in part and affirmed in part. Because the legal error set aside by the Court does not require correction through remand to the agency, judgment shall be entered for Defendant.

---

[1]For convenience, ESS LLC and ESS JVC are also occasionally referred to as "East Sea entities."

## BACKGROUND

The background of this case, set out fully in *East Sea 1*, is summarized briefly here for convenience. ESS JVC was named in the Notice of Initiation of the 5th Administrative Review ("5th AR") of an antidumping duty order on Certain Fish Fillets from Vietnam because it had exported subject merchandise to the United States during the period of review ("5th POR"). Initiation of Antidumping and Countervailing Duty Administrative Reviews and Requests for Revocation in Part, 73 Fed. Reg. 56,795, 56,796 (Sep. 30, 2008) ("Notice of Initiation"). Approximately six weeks prior to the end of the 5th POR, on June 17, 2008, ESS JVC changed its name to ESS LLC pursuant to a requirement of Vietnamese law. The administrative review was not initiated as to ESS LLC because Commerce received no request to review that entity, and ESS LLC was not identified as the exporter on any entries of subject merchandise imported during the 5th POR.[2] Nevertheless, ESS LLC was permitted to participate extensively in the administrative proceeding, and ultimately succeeded in obtaining a successor-in-interest analysis from Commerce. Commerce found that ESS LLC was not the successor-in-interest to ESS JVC as it had existed the last time it was reviewed, during the 3rd administrative review. As a result, ESS LLC did not qualify for the antidumping cash deposit rate previously assigned to ESS JVC, and was instead

---

[2]Approximately 19 entries made during the 5th POR and after June 17, 2008 (the date of the name change) identify ESS JVC as the exporter.

assigned the cash deposit rate of the Vietnam-wide entity, of $2.11/kg. Additionally, in the Final Results, Commerce determined that all entries made after the date of the name change would be treated as entries of ESS LLC, and would be liquidated at $2.11/kg.

In *East Sea 1*, this Court affirmed the results of the successor-in-interest analysis, but held unlawful the assignment of a cash deposit rate to ESS LLC equal to the Vietnam-wide entity rate. The Court found that for Commerce to presume that ESS LLC was an exporter under the control of the Vietnamese government without first considering record evidence to the contrary was not in accordance with law. On remand, the Court required Commerce to consider the evidence submitted by ESS LLC pertaining to its independence from the Vietnamese government, and to determine whether ESS LLC had established *de jure* and *de facto* independence, entitling it to a separate rate. The Court also required Commerce to reconsider its decision to liquidate all entries that had been exported by ESS JVC after the date of the name change at the rate assigned to ESS LLC. The Court has jurisdiction over this case pursuant to 28 U.S.C. 1581(c).

DISCUSSION

I. **The Treatment of Entries Made after June 17, 2008 Identifying ESS JVC as the Exporter**

A. **Remand Results**

In *East Sea 1*, this Court found that "the decision of Commerce to order liquidation of entries by ESS JVC at the rate assigned to ESS LLC for all entries after the effective date of the name change" was unsupported by substantial evidence in the record, and not in accordance with law. *East Sea 1* at 45-46. On remand, Commerce changed its position and decided to liquidate all entries made between the June 17, 2008 name change and the end of the POR, that identified ESS JVC as the exporter (the "Post Name Change Entries") at the rate assigned to ESS JVC in this review: $0.02/kg. *Remand Results* at 14. Although Commerce maintains its position that as of June 17, 2008, ESS JVC ceased to exist, it appears to have accepted Plaintiff's contention that "subject merchandise exported by East Sea JVC up to June 17, 2008 would not enter the United States for a number of weeks after exportation." (Pl.'s Rule 56.2 Mot. at 20; see also *Remand Results* at 14.) Commerce determined that the most reliable source for determining which East Sea entity exported the Post Name Change Entries was the import data provided by U.S. Customs and Border Protection ("CBP"), which clearly shows "that all entries [made by an East Sea entity] during these last 45 days of the POR were made by ESS JVC." *Remand Results* at 14.

**B.      Parties' Contentions**

Although it now stands to receive significantly more favorable antidumping duty treatment of the Post Name Change Entries, Plaintiff denies ever claiming that all of these entries were entries of ESS JVC.  (Plaintiff's Comments on Defendant's Redetermination on Remand ("Pl.'s Comments") at 9.)  Instead, it offers the carefully nuanced claim that it had only argued that "the product shipped from Vietnam by ESS JVC before the name change might arrive in the U.S. several weeks after the name change."  (Id.)  On May 7, 2010, Plaintiff requested leave to file a reply to Defendant's Response.  In its reply, Plaintiff suggests for the first time its "belie[f] that four shipments from Vietnam with invoices dated after June 17, 2008 entered U.S. commerce prior to July 31, 2008," and argues that by Commerce's "own reasoning . . . [these entries] must be attributed to ESS LLC."  (Pl.'s Reply to Def.'s Comments ("Pl.'s Reply") at 2.)  The four entries Plaintiff refers to apparently identify ESS JVC as the exporter.

Defendant takes the position that ESS LLC has conceded that it made no entries during the period of review.  (Def.'s Resp. to Pl.'s Comments ("Def.'s Resp.") at 2, 5, 10.)  On May 12, 2010, Defendant requested leave to file a surreply to Plaintiff's reply, in large part to argue that ESS LLC should be "judicially estopped" from now claiming that any Post Name Change Entries actually belong to ESS LLC.  (Def.'s Surreply to Pl.'s Reply ("Def.'s Surreply") at 1-4.)

C.     Analysis

Commerce's determination that the Post Name Change Entries should be liquidated at the rate assigned to ESS JVC is supported by substantial evidence in the record and otherwise in accordance with law, and is therefore sustained.  Specifically, Commerce's reliance on the official CBP import data in determining which East Sea entity exported the Post Name Change Entries is eminently reasonable.  See id.  This decision was supported by ESS LLC's assertion in its USCIT R. 56.2 Motion that exports from ESS JVC immediately prior to the name change would take "a number of weeks" to enter the country.  Without any evidence in the record explicitly linking entries with sales, it was reasonable for Commerce to conclude that the Post Name Change Entries correctly identified ESS JVC as the exporter.

The Court finds no evidence in the record to support Plaintiff's eleventh hour claim that as many as four of the Post Name Change Entries identified the wrong exporter, and disregards this argument as not probative here.  The Court also notes the abnormality and possible consequences stemming from Plaintiff's claim that its affiliated importer inaccurately identified the exporter on entries of subject merchandise.

## II. ESS LLC's Entitlement to a Separate Rate Determination

### A. Remand Results

In its *Remand Results*, Commerce determined that because ESS LLC had no entries during the 5th POR, it is "not entitled to a review on any issues, including separate rates." *Remand Results* at 3-5. Commerce states that it "is not required to conduct administrative reviews and change cash deposit rates of companies which have no entries during the period of review." Id. at 3 (citing Allegheny Ludlum Corp., et. al. v. United States, 346 F. 3d 1368 (Fed. Cir. 2003)). Commerce also disagrees with this Court's reliance on Transcom, Inc. v. United States, 182 F.3d 876 (Fed. Cir. 1999), claiming that Transcom does not require Commerce to provide "any interested party with the opportunity to rebut the presumption that they are not [sic] part of the non-market economy ('NME') government." Id. at 4. Additionally, in Commerce's view, being required "to resolve issues in a review for companies with no entries" would produce "an entirely new type of proceeding, a review without entries, and grant a new type of respondent status in a review, a company with no entries which is entitled to have a review." Id. at 4.

### B. Parties' Contentions

Plaintiff asserts that Commerce's concern that granting a separate rate test in this case sets an "undesirable precedent" for the agency is "wholly without merit." (Pl.'s

Comments at 23-25.)  Plaintiff is confident that a separate rates analysis depends on "export activities, and not entries," so it finds Commerce's claim that it cannot perform the separate rates analysis "disingenuous."  (<u>Id.</u> at 2.)  Plaintiff also claims that given the unusual circumstances under which it managed to obtain the successor-in-interest analysis in this administrative review, "[i]t appears highly unlikely that a similar case will present itself" to Commerce in the future.  (<u>Id.</u> at 25.)

In response, Defendant asserts that "Commerce has never awarded a separate rate to a company without any entries, let alone to a company that was found not to be a successor in interest . . . and a company that did not ask to be reviewed."  (Def.'s Resp. at 9.)  Defendant claims that when a company "never requested a review" and "made no entries," Commerce is not "free to review" it.  (Def.'s Resp. at 3.)

C.      Analysis

In *East Sea 1*, the Court did not ask Commerce to decide whether ESS LLC was entitled to a separate rate determination; the Court held that ESS LLC was so entitled. The Court therefore ordered Commerce to perform that separate rate determination, and to decide on the merits whether ESS LLC had rebutted the presumption of government control.  Consequently, Commerce's conclusion that ESS LLC is not **entitled** to a separate rate determination is not in accordance with law, and is set aside.

In the *Remand Results*, Commerce also evinces concern that the Court has required it to treat ESS LLC as if ESS LLC was subject to the 5th AR, despite the fact that ESS LLC had no entries during the 5th POR and was not named in the Notice of Initiation. Commerce should be reassured that this is not so. Consequently, Allegheny is not implicated in this case, as nothing in *East Sea 1* required Commerce to conduct an administrative review of a company without POR entries.[3]

What the remand order did require was for Commerce to finish the unusual job it began when it chose to conduct a successor-in-interest analysis, during an administrative review, of a company that was not subject to the administrative review. As set out in *East Sea 1*, when conducting a successor-in-interest analysis, Commerce determines whether or not to permit an alleged successor to qualify for the cash deposit rate calculated for an alleged predecessor. If Commerce reaches a negative successorship determination, the non-succeeding entity receives some sort of default rate—either an all-others rate, or in the case of a nonmarket economy, the antidumping rate of the government controlled country-wide entity (here, the Vietnam-wide entity rate). In the nonmarket economy context, that single default rate has been calculated for a theoretical country-wide entity, which is presumed to include all exporters, unless an

---

[3]The Court notes that nothing in Allegheny forbids Commerce from reviewing a company with sales and exports but not entries during the POR; Allegheny validated Commerce's policy of limiting review to companies with entries in the POR. See Allegheny, 346 F.3d at 1374.

exporter can prove that it is not under the control of the nonmarket economy government. The Court of Appeals for the Federal Circuit ("Federal Circuit") has both validated the use of this presumption (in Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997)), and emphasized that a party subject to the presumption has a right to attempt to rebut it (in Transcom, 182 F.3d at 883). Commerce erred by prohibiting ESS LLC from rebutting the presumption, thereby making the presumption "irrefutable rather than rebuttable." *East Sea 1* at 41.

While Commerce's understanding of the holding of Transcom is generally consistent with the Court's (compare *Remand Results* at 4, with *East Sea 1* at 39), Commerce does not appear to appreciate the CAFC's expressed reasoning underlying that holding. In Transcom, the CAFC forbade Commerce from subjecting certain parties to the NME entity rate because those parties had not been properly notified that this might happen through the notice of initiation. Transcom, 182 F.3d at 884. The reason for the notice requirement, however, was not to idly ensure the inclusion of a footnote in all future notices of initiation, but rather to ensure that the underlying right of respondents in a nonmarket economy antidumping proceeding to rebut the presumption of government control before being subjected to it would be vindicated—by notice, in the particular facts of Transcom. See Transcom, 182 F.3d at 883 ("[A] party that is subject to the presumption has a right to attempt to rebut it."). To

permit Commerce to apply the presumption of government control to ESS LLC without considering rebuttal evidence in the administrative record would permit Commerce to abrogate the right identified in Transcom and Sigma. Commerce's redetermination on remand that ESS LLC is not entitled to a separate rate determination is therefore set aside as contrary to law.

**III.   ESS LLC's *De Jure* and *De Facto* Independence From the Vietnamese Government**

**A.   Remand Results**

Appropriately, notwithstanding its opinion that a separate rate determination was not necessary, Commerce complied with this Court's specific remand instructions to consider the record evidence pertaining to ESS LLC's *de jure* and *de facto* independence from the Vietnamese government. After considering the submissions from ESS LLC, Commerce determined that there was "sufficient evidence . . . to support a finding of *de jure* absence of government control over [ESS LLC's] export activities." *Remand Results* at 9. In regards to *de facto* control, however, Commerce found that ESS LLC had not rebutted the presumption of government control because there was no evidence in the record of any of ESS LLC's "sales" or "trading activity." Id. at 12-13.

Essentially, Commerce found a massive deficiency in the evidence submitted by ESS LLC in an attempt to demonstrate *de facto* independence: namely, that "there is no evidence that ESS LLC exported merchandise to the United States during the POR."

*Remand Results* at 10.  Commerce reviewed Exhibit A16 to ESS LLC's Section A

Questionnaire Response, and found it to "demonstrate that ESS LLC did not have any

sales into the United States during the POR."  Id. at 10.  Commerce found that ESS LLC

had failed to provide "proper sales information (e.g., sales negotiation documents,

contracts, invoices, payment documentation, entry documents, etc.) . . . [needed] in

order to determine the absence of *de facto* Vietnamese government control."  Id. at 10-11.

For these reasons, Commerce determined that ESS LLC had not rebutted the

presumption of government control, and therefore did not revise ESS LLC's cash

deposit rate of $2.11/kg.  Id. at 15.

**B.    Parties' Contentions**

Plaintiff insists that it had both export and sales activity during the POR.  (Pl.'s

Comments at 12-16.)  Plaintiff cites to statements it made in its Section A Questionnaire

Response, filed by ESS LLC, that "ESS head office was involved in the exportation of

fish fillets," and "[d]uring the POR, ESS purchased processed fillets from its affiliate

Atlantic Co., Ltd. for export to the U.S."  (Id. at 12-13.)  Plaintiff cites sales data

indicating that both before and after its name change on June 17, 2008, "East Sea" was

engaged in the purchase of subject merchandise from Atlantic Co., Ltd.  (Id. at 13.)

Plaintiff asserts it is only logical to infer that ESS LLC continued to export this subject

merchandise to PSW.  (Id.)  Plaintiff claims that all activity occurring after June 17, 2008

is activity of ESS LLC, specifically pointing to Exhibit A16 of the Section A

Questionnaire response, which includes an entry summary dated June 18, 2008,[4] and an

invoice between PSW and an unaffiliated customer dated June 24, 2008. (Id. at 13, 11.)

Defendant reiterates Commerce's finding in the *Remand Results* that the record

contains no "evidence of East Sea LLC's trading activity." (Def.'s Resp. at 7.) Pointing

to what it sees as a gaping hole in ESS LLC's evidence, Defendant insists "that it has

become clear that East Sea LLC made no shipments, had no entries, and made no sales

during the period of review." (Id. at 8.) Defendant-Intervenor reiterates many of the

points made by Defendant, but also claims that the invoices provided by Plaintiff in

exhibit A16 to its Section A Response are "irrelevant" to the question of ESS LLC's *de

facto* independence of the Vietnamese government, because the invoices are for sales

between PSW and unaffiliated customers. (Resp. of Def.-Interv., Catfish Farmers of

America, to Pl.'s Comments ("Def.-Int.'s Resp") at 12-13.)

C.     **Analysis**

The Court finds that Commerce's determination that ESS LLC is not under *de jure*

control of the Vietnamese government is supported by substantial evidence on the

record, and is therefore sustained.

---

[4]This entry summary identifies ESS JVC as the exporter of the subject merchandise through both the manufacturer ID number in box 13, and the 10 digit AD/CVD Case No.

In regards to *de facto* control, the Court finds that while Commerce has overstated the deficiency in ESS LLC's evidence capable of rebutting the presumption of *de facto* control, it has nevertheless identified a genuine absence of information that is essential to the agency's analysis. For this reason, the agency's determination that ESS LLC failed to rebut the presumption of *de facto* government control is supported by substantial evidence in the record, and is therefore sustained.

Upon considering the *Remand Results* and the arguments of the parties, and upon closely inspecting the administrative record, the Court finds there is evidence in the record of at least one sale during the POR that is rightly attributed to ESS LLC. This sale is evidenced in Exhibit A16 to Plaintiff's Section A Response by an invoice between PSW and an unaffiliated customer dated June 24, 2008, and an undated sales contract between PSW and this same customer pertaining to the same purchase order identified in the invoice. Contrary to the assertions of Defendant-Intervenor that information about "the U.S. selling activities of a U.S. corporation is irrelevant" to the issue of ESS LLC's *de facto* independence from the Vietnamese government, it is highly relevant. In fact, this is precisely the information sought by Commerce's separate rate application, which requires the applicant to provide legible photocopies of documents "for the first sale by invoice date of subject merchandise to an <u>unaffiliated</u> customer in the United States during the POR/POI." <u>Separate Rate Application</u>, Office of AD/CVD Operations,

at 8 (emphasis in original).  This invoice fulfills this requirement, and belies

Commerce's repeated assertion in the *Remand Results* that ESS LLC had no sales during

the POR.  See *Remand Results* at 10, 12.

The problem for ESS LLC is the dearth of evidence of a complete export

transaction.  As explained in the Separate Rate Application, a party seeking a separate

rate must provide photocopies of "all of the following original documents" for a given

sale: (1) the CBP Form 7501 Entry Summary, (2) the bill of lading, (3) the commercial

invoice, (4) the packing list, and (5) documentation demonstrating receipt of payment.

Separate Rate Application at 8-9.  In addition to providing this evidence, the party

seeking a separate rate

> must provide a narrative explanation of how the documents relate to one
> another and what the specific links are among the documents.  If volumes or
> values do not exactly match from one document to the next, the applicant
> must provide in this narrative a clear explanation of any apparent
> discrepancies among the documents.  The applicant must also provide and
> explain additional documentation necessary to corroborate its explanation
> in this regard.  For example, if the invoice and payment amount do not
> match, the applicant must explain the difference and provide documentary
> support for this explanation.

Id. at 9.  By requiring this information from separate rate applicants, Commerce ensures

that it has sufficient evidence to evaluate the "*de facto* standards," i.e., to determine

whether the exporter "(1) sets its own export prices independent of the government and

other exporters; (2) retains the proceeds from its export sales and makes independent

decisions regarding the disposition of profits or financing of losses; [and] (3), has the authority to negotiate and sign contracts and other agreements." *Remand Results* at 10. Plaintiff's deficiency was not in failing to submit a Separate Rate Application *per se*, but in failing to provide the agency with this information, which is necessary to establish *de facto* independence from the government of Vietnam.

Plaintiff has pointed to evidence in the record that *suggests* ESS LLC continued to export subject merchandise to the United States. For instance, Commerce found that ESS JVC and ESS LLC shared the same base of unaffiliated customers, through their affiliated importer PSW. Issues & Decision Memorandum, A-522-801, 5th Administrative Review at 39 (Mar. 10, 2010), Admin. R. Pub. Doc. 185, <u>available at</u> http://ia.ita.doc.gov/frn/summary/VIETNAM/2010-5853-1.pdf (last visited May 21, 2010). ESS LLC continued to purchase subject merchandise from Atlantic Co., Ltd. after June 17, 2008. (Supplemental Separate Rate Certification at Exhibit SA-1.) After June 17, 2008, PSW continued to sell subject merchandise. (Section A Questionnaire Response at Exhibit A16.) ESS LLC now even asserts that as many as four entries at the end of the 5th POR may have incorrectly identified ESS JVC as the exporter, when they were actually exported by ESS LLC. (Pl.'s Reply at 2.) Even if ESS LLC exported subject merchandise during the POR, though, it still must provide Commerce with sufficient information from a single sale for export to the United States to permit

Commerce to determine whether the presumption of government control has been rebutted. Clearly, Plaintiff has not done this. Accordingly, Commerce's determination that ESS LLC is not entitled to a separate rate is supported by substantial evidence in the record and is in accordance with law.

## CONCLUSION

For the reasons given above, upon consideration of the *Remand Results*, Defendant's Motion for Clarification, Plaintiff's Comments, Defendant's Response, Defendant-Intervenor's Response, Plaintiff's Reply, Defendant's Surreply and all other papers and proceedings in this case, the Court sets aside in part and affirms in part the *Remand Results*. Furthermore, it is hereby

**ORDERED** that Plaintiff's motion to file a reply is GRANTED, and it is further

**ORDERED** that Defendant's motion to file a surreply is GRANTED, and it is further

**ORDERED** that Defendant's Motion for Clarification is GRANTED and the injunction issued in this case on March 25, 2010 shall remain in effect according to its own terms, pending a final and conclusive court decision in this litigation, notwithstanding language in *East Sea 1* to the contrary.

Judgment will be entered accordingly.

    <u>/s/ Gregory W. Carman</u>   <br>Gregory W. Carman, Judge

Dated:     May 27, 2010<br>
          New York, NY